Commonwealth *v*. Hill, Appellant.

Argued March 19, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*John H. Corbett, Jr.,* Assistant Public Defender, with him *John J. Dean,* Assistant Public Defender, and *George H. Ross,* Public Defender, for appellant.

*Richard Douglas Carleton,* Assistant District Attorney, with him *Robert L. Eberhardt,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, May 22, 1974:

In 1942, John Henry Hill pleaded guilty to murder generally, was convicted of murder in the first degree, and was sentenced to life imprisonment. In 1973, following two post-conviction proceedings and an evidentiary hearing, the trial court dismissed appellant's post-trial motions allowed as if timely filed. On this

direct appeal,[1] Hill contends that the absence of the transcript of his 1942 degree of guilt hearing prevents him from effectively challenging the sufficiency of the evidence raising his degree of guilt to murder in the first degree. More precisely, the issue presented is the adequacy of the available record to establish felony murder.

Our review of the existing record satisfies us that there presently is an equivalent picture of appellant's 1942 degree of guilt hearing. *Commonwealth v. Anderson*, 441 Pa. 483, 493, 272 A.2d 877, 882 (1971); see *Draper v. Washington*, 372 U.S. 487, 495, 83 S. Ct. 774, 779 (1963). The available record contains evidence sufficient to prove beyond a reasonable doubt that the charge of murder to which appellant pleaded guilty was established to be murder in the first degree. The judgment of sentence must be affirmed.

Appellant and two others were arrested for the robbery of Henry Vesely and for the robbery and murder of Joseph Ramoska. Both crimes were committed in close physical proximity early on the morning of May 14, 1942. While represented by privately-retained counsel,[2] Hill entered pleas of guilty to the Vesely robbery and the Ramoska murder. Following a hearing, the court found the murder of Ramoska to

---

[1] This Court's jurisdiction is found in the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, §202(1), 17 P.S. §211.202(1) (Supp. 1973).

[2] The trial court said of counsel: "Louis Little, an attorney in Allegheny County, with long experience in the trial of criminal offenses . . . represent[ed] the Petitioner in this case. Mr. Little tried many cases before the writer of this Opinion and was a man of great integrity and the highest ability. In fact, he had the reputation of being one of the best lawyers, if not the best, in the criminal field in Allegheny County." *Commonwealth v. Hill*, No. 82 September Sessions 1942 at 2 (Pa. O. & T. Allegheny County, filed November 14, 1966). Mr. Little died prior to the filing in 1966 of Hill's first PCHA petition.

be murder in the first degree and on October 13, 1942, sentenced appellant to life imprisonment.[3] No direct appeal was then taken.

In 1961, Hill's minimum sentence on the murder conviction was commuted, and he was released on parole. However, in 1965, he shot his girlfriend and threatened police officers with a revolver. As a consequence, Hill was indicted for assault and battery with intent to kill, assault and battery with intent to maim, pointing firearms, assault, violation of the Uniform Firearms Act, and resisting arrest. He entered counseled pleas of guilty to all these charges; his parole was revoked and on March 15, 1966 an additional concurrent sentence of one to two years imprisonment for assault with intent to kill was imposed.[4] Sentence was suspended on the other charges. On December 8, 1970, Hill was paroled for a second time, and has since remained on parole.[5]

---

[3] For the robbery of Vesely, Hill received on January 8, 1943, a concurrent ten to twenty year sentence. Hill's codefendants, Elwood Marsh and Charles Crawford (alias Charles Williams), also pleaded guilty to the Vesely robbery and the Ramoska murder. Without objection a single degree of guilt hearing was held for all three defendants, and Marsh and Crawford were also found guilty of murder in the first degree and sentenced to life imprisonment for the Ramoska murder. Crawford received a concurrent five to ten year sentence for the Vesely robbery; Marsh's sentence for this crime does not appear in the record.

[4] Of this sentence, the trial court stated: "Realizing that Hill would be required to be reincarcerated in the Correctional Institution because of his parole, we imposed a sentence of not less than one nor more than two years. The atrociousness of this crime called for a much longer sentence than the one imposed." *Commonwealth v. Hill*, No. 82 September Sessions 1942 at 2 (Pa. O. & T. Allegheny County, filed March 27, 1967).

[5] Appellant's status as parolee does not render this appeal moot. *United States v. Glass*, 317 F.2d 200, 202 (4th Cir. 1963); *United States ex rel. Outrone v. Fay*, 289 F.2d 470, 473 (2d Cir. 1961); *United States v. Brilliant*, 274 F.2d 618, 620 (2d Cir.),

Shortly after his 1966 recommitment, Hill filed a petition under the Post Conviction Hearing Act[6] challenging his 1942 conviction of murder in the first degree.[7] After a counseled evidentiary hearing, relief was denied. This Court affirmed, holding that appellant's plea of guilty was knowingly, intelligently, and voluntarily entered, that his 1942 trial counsel was not ineffective, and that the trial court had jurisdiction. *Commonwealth v. Hill*, 427 Pa. 614, 235 A.2d 347 (1967).

Thereafter, in November, 1968 and in May, 1969, appellant filed additional pro se post-conviction petitions which were treated by the PCHA court in a single proceeding. In those uncounseled petitions, Hill contended that he had not been advised in 1942 of his right of appeal.[8] The PCHA court, believing this issue to be waived because it was not raised in Hill's 1966 counseled petition,[9] dismissed the petitions without a hearing. Appellate counsel was then appointed and on July 15, 1971, this Court reversed and remanded

---

cert. denied, 363 U.S. 806, 80 S. Ct. 1242 (1960) ; see *Sibron v. New York*, 392 U.S. 40, 50-58, 88 S. Ct. 1889, 1896-1900 (1968) ; cf. Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, §3(b), 19 P.S. §1180-3(b) (Supp. 1973).

[6] Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. §§1180-1 to -14 (Supp. 1973).

[7] Hill there raised three issues—the voluntariness of his plea, the effectiveness of trial counsel, and a nonjurisdictional challenge relating to his arraignment.

[8] Hill also again attacked the validity of his plea and the effectiveness of trial counsel. Because these issues were finally litigated by our disposition in 1967 of Hill's first petition, they were not considered. See *Commonwealth v. Hill*, 444 Pa. 75, 77, 279 A.2d 170, 172 (1971) ; Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, §4(a)(3), 19 P.S. §1180-4(a)(3) (Supp. 1973).

[9] See Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, §4(b), 19 P.S. §1180-4(b) (Supp. 1973).

the case for a counseled evidentiary hearing to determine whether appellant's right to raise the issue of denial of appeal was waived,[10] and, if not, whether he in fact was denied his right of appeal. *Commonwealth v. Hill*, 444 Pa. 75, 279 A.2d 170 (1971).

In conformity with our remand, a counseled hearing was conducted on January 11, 1972. The hearing court concluded that appellant had not waived his right of appeal. And on December 8, 1972, more than thirty years after conviction, Hill was allowed to file a motion for a new trial, as if timely filed, and to pursue his appellate rights in accordance with the mandate of *Douglas v. California*, 372 U.S. 353, 83 S. Ct. 814 (1963), and *Commonwealth v. Wilson*, 430 Pa. 1, 241 A.2d 760 (1968). See *Commonwealth v. Crowson*, 450 Pa. 218, 299 A.2d 318 (1973); *Commonwealth v. Gilmer*, 441 Pa. 170, 270 A.2d 693 (1970). The Commonwealth took no appeal.

Post-trial motions were then filed. The notes of testimony of the 1942 degree of guilt hearing were unavailable at that time, and are presumed lost.[11] In support of his motion for a new trial, appellant argued only that the absence of a transcript of the 1942 guilty plea proceedings effectively denied him a meaningful direct appeal. It is from the denial of this motion that the instant appeal is taken.

The right to meaningful appellate review must necessarily be determined in light of what appellant may raise on direct appeal. See *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S. Ct. 431, 434 (1971); *Mayer*

---

[10] See *Douglas v. California*, 372 U.S. 353, 83 S. Ct. 814 (1963).

[11] As nearly as can be determined, the transcript was lost sometime after the PCHA hearing court's dismissal of Hill's 1966 petition, and before this Court's 1967 affirmance in *Commonwealth v. Hill*, 427 Pa. 614, 235 A.2d 347 (1967). However, the remaining record was sufficient for this Court then to decide the issues of voluntariness of the plea and the effectiveness of trial counsel.

*v. Chicago,* 404 U.S. 189, 199-200, 92 S. Ct. 410, 417 (1971) (BURGER, C. J., concurring) ; *Draper v. Washington,* 372 U.S. 487, 495-96, 83 S. Ct. 774, 779 (1963) ; *Commonwealth v. Jones,* 450 Pa. 372, 301 A.2d 631 (1973) ; cf. *Commonwealth v. DeSimone,* 447 Pa. 380, 385, 290 A.2d 93, 96 (1972). Appellant pleaded guilty to murder generally and was adjudged guilty of murder in the first degree. Following a plea of guilty to an indictment charging murder and a verdict of murder in the first degree, the only issues cognizable on direct appeal are the validity of the plea, the lawfulness of the sentence, the jurisdiction of the trial court, the effectiveness of trial counsel, and the sufficiency and admissibility of the evidence introduced to raise the offense from murder generally to murder in the first degree.[12] *Commonwealth v. Lofton,* 448 Pa. 184, 292 A.2d 327 (1972) ; *Commonwealth v. Butler,* 446 Pa. 374, 288 A.2d 800 (1972) ; *Commonwealth v. Robinson,* 442 Pa. 512, 276 A.2d 537 (1971) ; *Commonwealth v. Allen,* 443 Pa. 447, 277 A.2d 818 (1971) ; *Commonwealth v. Taylor,* 439 Pa. 321, 266 A.2d 676 (1970) ; *Commonwealth v. Ewing,* 439 Pa. 88, 264 A.2d 661 (1970).

This Court has determined in earlier PCHA proceedings that appellant's plea was voluntary and valid, that the trial court had jurisdiction, and that trial counsel was not ineffective. *Commonwealth v. Hill,*

---

[12] Hill's plea of guilty of murder generally is, of course, in itself sufficient to sustain a conviction of murder in the second degree. See, e.g., *Commonwealth v. Dillinger,* 440 Pa. 336, 269 A.2d 505 (1970) ; *Commonwealth v. Brown,* 436 Pa. 423, 260 A.2d 742 (1970) ; *Commonwealth v. Culpeper,* 434 Pa. 15, 252 A.2d 624 (1969). "When an accused pleads guilty to an indictment charging him with murder, he admits that a murder has been committed and that he is the perpetrator thereof; the plea in and of itself is sufficient to support a verdict of second degree murder." *Commonwealth v. Ward,* 442 Pa. 351, 356, 275 A.2d 92, 95 (1971).

427 Pa. 614, 235 A.2d 347 (1967). These issues may not be relitigated; our earlier holdings as to these issues are final and conclusive. Cf. Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, §4(a)(3), 19 P.S. §1180-4(a)(3) (Supp. 1973). That life imprisonment is a lawful sentence for murder in the first degree cannot successfully be challenged. Act of June 24, 1939, P.L. 872, §701, as amended, 18 P.S. §4701 (1963) (now 18 Pa. S. §1102 (1973)).

In view of appellant's guilty plea and our decisions on his prior PCHA claims, the only issue now available to Hill is whether the evidence is sufficient to establish that the murder of Joseph Ramoska was murder in the first degree. The narrow question to be resolved, therefore, is whether the available record contains an equivalent picture of admissible evidence sufficient to raise appellant's plea of murder generally to murder in the first degree.

In *Commonwealth v. Anderson,* 441 Pa. 483, 493, 272 A.2d 877, 882 (1971),[13] this Court held that "while a transcript per se is not an absolute due process necessity, there must at least be an equivalent 'picture' of what transpired below."[14] Here, the 1942 transcript is missing. But, as the Supreme Court stated in

---

[13] See also *Wade v. Wilson,* 396 U.S. 282, 90 S. Ct. 501 (1970); *Gardner v. California,* 393 U.S. 367, 89 S. Ct. 580 (1969); *Long v. District Court,* 385 U.S. 192, 87 S. Ct. 362 (1966); *Norvell v. Illinois,* 373 U.S. 420, 83 S. Ct. 1366 (1963); *Eskridge v. Washington Prison Bd.,* 357 U.S. 214, 78 S. Ct. 1061 (1958); *Ross v. Schneckloth,* 357 U.S. 575, 78 S. Ct. 1387 (1958); *Griffin v. Illinois,* 351 U.S. 12, 76 S. Ct. 585 (1956); *Commonwealth v. Goldsmith,* 452 Pa. 22, 304 A.2d 478 (1973); *Commonwealth v. Jones,* 450 Pa. 372, 301 A.2d 631 (1973); *Commonwealth v. Norman,* 447 Pa. 515, 291 A.2d 112 (1972); *Commonwealth v. DeSimone,* 447 Pa. 380, 290 A.2d 93 (1972).

[14] *Anderson* was held fully retroactive in *Commonwealth v. DeSimone,* 447 Pa. 380, 290 A.2d 93 (1972), and thus applies to this direct appeal.

*Draper v. Washington,* 372 U.S. 487, 495, 83 S. Ct. 774, 779 (1963), "Alternative methods [to stenographic transcripts] of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise." Although a " 'record of sufficient completeness' to permit proper consideration of [appellant's] claims" is essential, id. at 499, 83 S. Ct. at 781, "[a] 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript." *Mayer v. Chicago,* 404 U.S. 189, 194, 92 S. Ct. 410, 414 (1971).

The critical inquiry is thus "the availability of alternative devices that . . . fulfill the same functions as a transcript." *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S. Ct. 431, 434 (1971) (footnote omitted). Applying the principles enunciated in *Britt, Mayer, Draper,* and *Anderson,* the trial court in 1973 examined the available record. After reviewing alternative devices fulfilling the same function as the 1942 transcript, the court held that an equivalent picture of the relevant plea proceedings existed. Accordingly, it dismissed appellant's post-trial motions. We agree that there is presently an equivalent picture of the 1942 degree of guilt hearing. Review of that "equivalent picture" convinces us that the murder of Joseph Ramoska was "committed in the perpetration of . . . robbery." Hence a verdict of murder in the first degree was proper. Act of June 24, 1939, P. L. 872, §701, as amended, 18 P.S. §4701 (1963) (now 18 Pa. S. §2502(a) (1973)).

An equivalent picture of sufficient completeness to show that the murder to which appellant pleaded guilty was committed during the perpetration of a robbery is found in the record of Hill's guilty plea, his adjudication of murder in the first degree, and subsequent proceedings. Cf. *Commonwealth v. Young,* 456 Pa. 102, 317 A.2d 258 (1974). That record pic-

ture is reflected in transcripts of counseled collateral proceedings, in opinions of the PCHA hearing court written with the aid of the 1942 transcript, in appellant's briefs in this Court, and in earlier opinions of this Court.

In *Commonwealth v. Hill*, 427 Pa. 614, 617, 235 A.2d 347, 349 (1967), upon examination of the record which at that time did not include the 1942 notes of testimony,[15] this Court stated, "Shortly after their arrest, all three men voluntarily confessed their guilt orally, and later in writing." Hill's counseled brief in this Court for that 1967 appeal states, "[A]ppellant . . . signed a written statement admitting his part in the felony murder charged in the indictment."[16] The attorney who in 1966 represented Hill at his first PCHA hearing used the 1942 transcript in preparing that case; he testified at appellant's 1972 hearing on remand that "on the merits of the degree of guilt, [the transcript] consisted of nothing more than the entry of the confession through the police officers who took the confession." The 1966 PCHA hearing judge, who also presided at the 1942 degree of guilt hearing, stated, "[T]hree written statements of each of the defendants were taken and offered in evidence without any objection."[17]

Appellant now maintains that the "nature" of the evidence showing felony murder cannot be reconstructed without the 1942 transcript. To the contrary, its nature is abundantly clear. The existing record plainly establishes that appellant voluntarily confessed his participation in a felony murder; his confession was

---

[15] See note 11 supra.

[16] Brief for Appellant at 5, *Commonwealth v. Hill*, 427 Pa. 614, 235 A.2d 347 (1967).

[17] *Commonwealth v. Hill*, No. 82 September Sessions 1942 at 3 (Pa. O. & T. Allegheny County, filed March 27, 1967).

admitted without objection; the evidence of felony murder relied on by the court is contained in that confession. Counsel whose trial stewardship of this case was held in 1967 by this Court not to be ineffective, interposed no objection to the admission of appellant's confession. Consequently, the 1942 hearing court justifiably relied on the facts in that confession.

A properly-admitted confession of participation in a robbery resulting in murder is sufficient to sustain a verdict of murder in the first degree. See, e.g., *Commonwealth v. Blanchard,* 345 Pa. 289, 26 A.2d 303 (1942); *Commonwealth v. Stelma,* 327 Pa. 317, 192 A. 906 (1937). Thus if the recitals in appellant's confession prove felony murder beyond a reasonable doubt, the 1942 judgment of sentence must be affirmed.

The contents of appellant's confession appear in the two PCHA opinions[18] of Judge GRAFF, who as previously noted also presided at appellant's 1942 degree of guilt hearing. Each opinion by Judge GRAFF contains a statement of the facts surrounding the Ramoska murder. These opinions, both consistent with each other, were written with the aid of the 1942 transcript, and are based on appellant's confession.

In the first opinion, filed on November 14, 1966, Judge GRAFF states: *"From the evidence introduced at the time of the entering of the plea* it appears that

[18] The explanation for the filing of two separate opinions is found in our earlier opinion in *Commonwealth v. Hill,* 427 Pa. 614, 615, 235 A.2d 347, 348 (1967): "After an attorney was appointed to represent Hill in this [1966] post-conviction proceeding, the hearing judge, on November 14, 1966, dismissed the petition without an evidentiary hearing. However, on the very next day, consistent with our decision in *Commonwealth ex rel. West v. Myers,* 423 Pa. 1, 222 A.2d 918 (1966), Judge GRAFF wisely vacated this order and scheduled an evidentiary hearing." Judge GRAFF filed two separate opinions dismissing the petition, one before the evidentiary hearing and one thereafter.

upon May 14, 1942, at approximately two o'clock in the morning, the defendant, together with one Elwood Marsh and one Charles Crawford, attended a carnival in Patton Township, this county. After leaving the carnival and coming to the Borough of Wilmerding, they assaulted and robbed a man named Vescely [sic]. This victim recognized Elwood Marsh. The three assailants left him, believing that he was dead. The Petitioner and his accomplices then walked down Patton Street Extension when they observed a man coming along the street whom they thought was drunk. Crawford strong-armed and beat this man, causing him to fall to the pavement, receiving an injury upon his head which fractured his skull and caused his death. The three men then picked up the victim, Ramoska, carried him to a vacant lot where they rifled his pockets and left him to die. The police were later informed about the two incidents and subsequently the three assailants were arrested. Based upon this testimony, all thee [sic] of the assailants were guilty of a felony murder and consequently murder of the first degree." *Commonwealth v. Hill,* No. 82 September Sessions 1942 at 1-2 (Pa. O. & T. Allegheny County, filed November 14, 1966) (emphasis added). These facts are reiterated in Judge GRAFF'S second opinion, filed March 27, 1967.[19]

---

[19] Judge GRAFF states in his second opinion: "*It appears from the testimony taken at the time of the entering of the plea of guilty* that Hill, Marsh and Crawford discussed the matter of securing some money for Memorial Day and decided to commit a robbery. They attended a carnival in Patton Township, this county. Thereafter they left the carnival, came to the Borough of Wilmerding and near this place assaulted and robbed a man named Henry Vesely. They left him, believing that he was dead. A short distance away they observed Joseph Ramoska approaching. This man was also assaulted, knocked to the ground and his skull fractured. He was carried into a lot, his pockets rifled, and left die. Police officers were informed of the dead body at seven o'clock in the morning and thereafter conducted an investigation. Vesely was

At no time during the almost eight intervening years since Judge GRAFF's opinions has appellant ever disputed the truth of these consistent statements of fact. Neither on this direct appeal nor on his appeals from the two prior PCHA hearings has Hill asserted that the facts establishing the felony murder of Ramoska are inaccurately reported. Indeed, appellant in his 1967 brief in this Court conceded that "most of the relevant facts appear in the [PCHA] transcripts that are available."[20] Similarly, appellant has not challenged this Court's statement in *Commonwealth v. Hill*, 427 Pa. 614, 617, 235 A.2d 347, 349 (1967), that "[a]ppellant and two other men, were arrested in connection with . . . the robbery and murder of Joseph Ramoska." Moreover, when Judge GRAFF at a 1957 habeas corpus hearing[21] recalled on the record that Hill was a codefendant "in this murder case which was a killing committed in the perpetration of a robbery," neither appellant nor his counsel disagreed with the court's statement.

---

contacted and through him and other testimony, the defendants were suspected of committing the crime. They were taken into custody and oral statements were first made which disclosed their guilt. Thereafter three written statements of each of the defendants were taken and offered in evidence without any objection." *Commonwealth v. Hill*, No. 82 September Sessions 1942 at 3 (Pa. O. & T. Allegheny County, filed March 27, 1967) (emphasis added).

[20] Brief for Appellant at 4, *Commonwealth v. Hill*, 427 Pa. 614, 235 A.2d 347 (1967). As indicated earlier, counsel had access to the 1942 transcript when arguing in the 1966 hearing court, but the transcript was lost by the time an appeal was taken. See note 11 supra.

[21] In 1957, appellant unsuccessfully challenged his transfer from the Correctional Institution at Camp Hill to the State Correctional Institution at Pittsburgh. Cf. *Commonwealth ex rel. Marsh v. Cavell*, 8 P. D. & C. 2d 80 (C.P. Allegheny County, 1956), aff'd per curiam, 388 Pa. 571, 131 A.2d 81 (1957) (identical challenge by Elwood Marsh, one of Hill's co-defendants).

14

We must conclude, therefore, that the available record "place[s] before [this] appellate court an equivalent report of the events at trial." *Draper v. Washington,* 372 U.S. 487, 495, 83 S. Ct. 774, 779 (1963). See also *People v. Shearer,* 181 Colo. 237, 508 P.2d 1249 (1973). Review of the record evidence in the light most favorable to the Commonwealth satisfies us that the 1942 hearing court properly determined that all the elements of felony murder—murder in the first degree —were proved beyond a reasonable doubt. *Commonwealth v. Yount,* 455 Pa. 303, 320, 314 A.2d 242, 251 (1974); *Commonwealth v. Lee,* 450 Pa. 152, 154, 299 A.2d 640, 641 (1973).

Judgment of sentence affirmed.