389 A.2d 48

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Thomas LaSANE, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 10, 1977.

Decided June 14, 1978.

630

Robert Jay Vedatsky, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

On October 2, 1972, Thomas LaSane plead guilty to murder generally in the Court of Common Pleas of Philadelphia and the Commonwealth certified the degree of guilt rose no higher than murder of the second degree. The trial court accepted the plea, found LaSane guilty of murder of the second degree, and imposed a sentence of not less than seven nor more than twenty years imprisonment. No post-verdict

motions were filed and no appeal from the judgment of sentence was entered. On April 23, 1975, LaSane filed a petition for relief under the Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, § 1 *et seq.*, 19 P.S. § 1180–1 *et seq.* (Supp.1977–78) [Hereinafter: PCHA]. Counsel was appointed to assist him. Following a hearing, relief was denied. This appeal is from that order.

LaSane claims the post-conviction hearing court erred in denying relief for the following reasons:

1) his guilty plea was ineffective because the record does not show the plea was knowing, intelligent, and voluntary;

2) he was denied effective assistance of counsel; and,

3) he was denied his constitutional right to a speedy trial.

Additionally, in a "Reply Brief," LaSane states in pertinent part:

"[the record shows he was] confused and bewildered by the entire guilty plea process [and was p]ressured by his family, inadequately represented by his attorneys, and unclear as to precisely what was taking place, [and thus] did not knowingly and voluntarily enter a guilty plea, [and i]f these arguments are accepted, they clearly demonstrate that LaSane did not knowingly and understandingly waive his right to appeal from his conviction."

To be eligible for relief under the PCHA, a petitioner must prove, inter alia:

"That the error resulting in his conviction and sentence has not been . . . waived."

Section 3(d) of the PCHA, 19 P.S. § 1180–3(d) (Supp.1977–78).

Furthermore, Section 4(b) of the PCHA, 19 P.S. § 1180–4(b) (Supp.1977–78), provides:

"For purposes of this act, an issue is waived if:

"(1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this act; and

"(2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue."

Finally, Section 4(c) of the PCHA, 19 P.S. § 1180–4(c) (Supp.1977–78), provides:

"There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure."

■ Since the validity of LaSane's plea was cognizable on direct appeal, *Commonwealth v. Greer*, 457 Pa. 646, 326 A.2d 338 (1974); *Commonwealth v. Hill*, 457 Pa. 1, 319 A.2d 886 (1974), the issue was waived and could not be raised in the post-conviction proceeding unless LaSane either rebutted the presumption that the failure to raise the issue on direct appeal was knowing and understanding or alleged and proved the existence of an extraordinary circumstance justifying the failure to raise the issue. LaSane argues the issue of the validity of his plea is not waived because extraordinary circumstances exist to excuse his failure to raise the claim on direct appeal, namely, a deprivation of his appellate rights, see *Commonwealth v. Tunnell*, 463 Pa. 462, 345 A.2d 611 (1975), and/or ineffective assistance of counsel, see *Commonwealth v. Wideman*, 453 Pa. 119, 306 A.2d 894 (1973).

■■ Although a deprivation of his appellate rights is now advanced as an extraordinary circumstance, it was not advanced in the post-conviction relief proceedings in the trial court and accordingly we may not now consider it. See *Commonwealth v. Moore*, 462 Pa. 231, 340 A.2d 447 (1975); *Commonwealth v. Agie*, 449 Pa. 187, 296 A.2d 741 (1972). Ineffective assistance of counsel was alleged as an extraordinary circumstance justifying the failure to challenge the validity of the plea on direct appeal and has been pursued; thus, we must determine if this allegation has been established as required by Section 4(b)(2) of the PCHA, 19 P.S. § 1180–4(b)(2) (Supp.1977–78), to determine if we should examine the validity of the plea. Furthermore, since LaSane is represented in these post-conviction proceedings for the first time by counsel other than his counsel at the plea

proceedings, we will also consider his claim of ineffective counsel, advanced as an independent basis for relief, in his post-conviction hearing petition and here on appeal, as a separate basis for relief. Section 3(c)(6) of the PCHA, 19 P.S. § 1180–3(c)(6) (Supp.1977–78) and *Commonwealth v. Mabie,* 467 Pa. 464, 359 A.2d 369 (1976). LaSane also had the burden of proving ineffectiveness of counsel as an independent basis for relief. Section 3 of the PCHA, 19 P.S. § 1180–3.

To support his argument that counsel was ineffective, LaSane claims: (1) James Owens, co-counsel at the time the plea was entered, did not adequately prepare before advising him to plead guilty [1] in that he did not review the "briefs of counsel and the decision of the court on the suppression application to evaluate the chances of having the denial [order] reversed on appeal"; [2] and, (2) Owens failed to file a motion to dismiss the charges because of delay between arrest and trial.[3]

The hearing court "found as a fact that [LaSane's] trial counsel ably and vigorously represented him" and concluded "as a matter of law that [LaSane] was not deprived of his constitutional right to representation by competent and effective counsel."

As to LaSane's first claim, the background is this:

Initially, Feingold alone represented LaSane. He filed a motion to suppress an incriminatory statement given by LaSane to police, but the motion was denied. Feingold, despite having experience in the criminal-law area, did not consider himself sufficiently knowledgeable to try a homicide case because of his inexperience with that particular type of charge. Moreover, Feingold felt he was too friendly

1. Allen Feingold, LaSane's other counsel, opposed a plea of guilty.

2. The application requested the suppression of a statement given by LaSane to police without which, according to LaSane, a conviction could not have resulted.

3. LaSane was arrested on October 19, 1971, and the guilty plea was entered on October 2, 1972, immediately prior to the scheduled commencement of trial.

with LaSane's family to properly handle the case. As a result, Owens was appointed as co-counsel for LaSane four days prior to the date set for trial. In preparing for trial, Owens, inter alia, conferred with Feingold, the chief of the homicide division of the district attorney's office, and another representative of the district attorney's office; reviewed the "entire file of the District Attorney's Office"; reviewed the notes of testimony from the suppression hearing; prepared questions for voir dire; prepared rough notes for an opening statement; interviewed the police officer to whom the incriminating statement was given; outlined the manner in which the "trial would go"; and, conferred with LaSane and a representative of the district attorney's office about entering a guilty plea.[4]

Prior to trial, Owens advised LaSane to plead guilty. Owens explained to LaSane "in detail" the consequences of pleading guilty and discussed the matter with members of LaSane's family. LaSane objected to pleading guilty because he wanted to testify and thereby correct certain portions of the incriminating statement he considered inaccurate. Owens concluded that LaSane's testimony would be prejudicial to his case and thus advised against such an approach.[5]

The Commonwealth offered to certify the crime rose no higher than murder of the second degree and to recommend a certain sentence. LaSane objected to the length of the sentence and Owens sought and obtained a reduction in the length of sentence to be recommended. LaSane then agreed to plead guilty.

█  *LaSane does not now advance any legal or factual reason to support a conclusion that his confession was ille-*

4. Additional periods of preparation were involved, but Owens could not specifically recall what he did during those periods.

5. LaSane never objected to pleading guilty on the ground that he was innocent.

*gally obtained.*[6]  The assertion that Owens did not consider
the possibility of a reversal of the suppression court's order
is contradicted by the evidence.  As previously mentioned,
Owens did review the notes of testimony from the suppres-
sion hearing and conferred with the officer who took La-
Sane's statement.[7]  Thus, we cannot conclude Owens was
ineffective for advising LaSane to plead guilty, rather than
go to trial and thereafter appeal the suppression court's
order.  First, he did consider that possibility as evidenced by
the review of the notes of testimony and the conference
with the police officer.  Second, there is no apparent legal
reason why the suppression court's order would have been
reversed on appeal.  Third, the advice given to LaSane had
"*some reasonable basis* designed to effectuate [LaSane's]
interests" [emphasis added], *Commonwealth ex rel. Wash-
ington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967),
namely, avoiding a possible conviction of murder of the first
degree and a more severe sentence.[8]  Accordingly, LaSane's
first contention is without merit and counsel cannot be
deemed ineffective on the basis of LaSane's first claim.

As to the claim of ineffectiveness for failure to seek a
dismissal of the charges on the ground of a violation of the
constitutional speedy-trial requirement, LaSane asserts the
delay in the commencement of the trial deprived him of the
testimony of an alibi witness who died about two months
before the date of trial.

As to this, the record is as follows:

Owens testified he did not remember LaSane or anyone
else indicating to him that LaSane could have produced an
alibi witness.  Owens also testified that, if such a witness

6.  It is not specifically claimed the suppression court's order was
    legally incorrect nor is any reason advanced to support such a
    conclusion.

7.  As to reviewing the briefs of counsel and the suppression court's
    opinion, Owens testified that he could not recall whether or not he
    did so.

8.  The victim was stabbed numerous times and a conviction for
    murder of the first degree was possible under the evidence.

had been mentioned, "something like that would stay in [his] recollection," but that he did not know if he would have filed a motion to dismiss based on a speedy-trial claim had such a witness existed and died because it would have depended on the totality of the circumstances. Further, Owens testified that, in his opinion, since the delay between arrest and trial was one year, and since he would have had to show the delay was unreasonable and resulted in prejudice to LaSane, he had to recognize that part of the delay was due to the motion to suppress and that a year's delay was commonplace in 1972. In furtherance of LaSane's claim that his counsel was ineffective and ill-prepared for trial, Feingold testified that he was told an alibi witness existed; that he spoke with the alibi witness a couple of months after the arrest and received assurance he would be available to testify; that the witness was subsequently killed in a gang-related incident; but, that he did not remember telling Owens such a witness existed. Frederick Banks, LaSane's stepfather, testified that he spoke with a friend of LaSane named "Tony" who could have provided an alibi; that "Tony" was killed two months prior to the plea being entered; that he informed Feingold of the witness, but, that he did not inform Owens.

While normally the test for determining the effectiveness of counsel is whether a particular course of action chosen by counsel had some reasonable basis designed to effectuate his client's interests, where it is asserted counsel is ineffective for failing to advance a claim, we do not make inquiry into the reasons for counsel's failure to do so if the claim is without arguable merit.[9] *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

"A speedy trial claim is analyzed in two steps: (1) is the delay itself sufficiently long to trigger the 'necessity for inquiry into other factors that go into the [balancing test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)];' and (2) a balancing of the length of delay,

9. In discussing the "merits" of the speedy-trial claim, we emphasize that we do so solely for the purpose of resolving the ineffectiveness claim. *Commonwealth v. Hubbard*, supra at 278, 372 A.2d at 696.

reason for delay, defendant's assertion of the right and prejudice to the defendant." [Footnotes omitted.]

*Commonwealth v. Reinhart,* 466 Pa. 591, 597–98, 353 A.2d 848, 852 (1976).

Instantly, LaSane was arrested on October 19, 1971; he was indicted on December 9, 1971; a motion to suppress was filed on February 7, 1972; a suppression hearing was conducted on March 20–21, 1972; a psychiatric evaluation to determine LaSane's competency to stand trial and involving a sixty-day institutional commitment was ordered on April 14, 1972, as a result of a psychiatric report dated April 6, 1972; the psychiatric evaluation was completed on June 22, 1972; the motion to suppress was denied September 27, 1972; and, trial was scheduled for October 2, 1972, the day the plea was entered.

■ Given these facts, we are not persuaded a motion to dismiss would have advanced an arguably meritorious claim of a violation of LaSane's right to a speedy trial. It is doubtful that a delay of less than one year should have even triggered inquiry of counsel into the other factors. Compare *Commonwealth v. Roundtree,* 469 Pa. 241, 364 A.2d 1359 (1976) (more than six-year delay). But, even assuming the delay was sufficiently long to warrant consideration of the factors of the balancing test, the claim is still without arguable merit. The delay was not unreasonable in light of the seriousness of the charge because much of the delay was attributable to the filing of the motion to suppress and LaSane's pretrial psychiatric evaluations.[10]

10. The only factor weighing in favor of finding the claim had arguable merit is the death of the alibi witness. But, given the weight of the other factors, we do not consider this factor sufficient in itself to provide arguable merit to the claim.

We note further that counsel's failure to consider the death of the alibi witness is relevant only to determining if the choice not to file the motion was informed and thus had a reasonable basis. *Commonwealth v. Roundtree,* supra. Since we do not reach the question of whether counsel's course of action had a reasonable basis designed to effectuate his client's interest because we find the claim is without arguable merit, we need not concern ourselves with this lack of communication by counsel.

■ It follows that, since counsel has not been shown to be ineffective, relief was properly denied on this basis. Furthermore, since ineffectiveness of counsel as an extraordinary circumstance was not established by LaSane to excuse his failure to challenge the validity of the guilty plea by way of direct appeal, the plea may not now be examined. *Commonwealth v. Tunnell,* supra; *Commonwealth v. Wideman,* supra.

Order affirmed.

LARSEN, J., concurs in the result.

MANDERINO, J., files a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. The majority opinion inaccurately portrays appellant's argument that he was denied the effective assistance of counsel at the guilty plea hearing as follows:

"To support his argument that counsel was ineffective, LaSane claims: (1) James Owens, co-counsel at the time the plea was entered, did not adequately prepare before advising him to plead guilty in that he did not review the 'briefs of counsel and the decision of the court on the suppression application to evaluate the chances of having the denial [order] reversed on appeal'; and, (2) Owens failed to file a motion to dismiss the charges because of delay between arrest and trial."

(footnotes omitted) (at p. 634.)

In the brief filed before us by LaSane's counsel, however, question number two in the "Statement of Questions Presented" asks,

"II. Whether Appellant's guilty plea was invalid because he was denied his constitutional right to effective representation of counsel."

(appellant's brief, p. 2)

Furthermore, in the "Summary of Argument" portion of appellant's brief before us, the following is stated.

"II. Appellant's guilty plea was also defective because he was denied his constitutional right to effective assist-

ance of counsel. The combined efforts of Mr. Feingold and Mr. Owens on his behalf fell far short of even the minimal representation to which he was entitled. Mr. Feingold had repeatedly proclaimed his lack of competence and his desire to withdraw from the case. Mr. Owens entered the case at the last minute and evidently focused very little attention on preparing a defense. In his judgment there was nothing special about the case and his conduct suggests that primary interest appears to have been to reach quick agreement on "favorable terms" for a guilty plea so that he might wrap up the matter as quickly as possible. Feingold and Owens did not communicate particularly well to each other and were at least as ineffective together as either of them might have been operating alone."

(appellant's brief p. 20(a))

In support of the above statement of the question and summary of argument, that section of appellant's brief entitled "Statement of the Case" contains the following account of the circumstances surrounding counsel's allegedly ineffective representation at the guilty plea hearing.

"There was lengthy testimony at the post conviction hearing concerning the circumstances leading up to the guilty plea by Thomas LaSane. As compared to Mr. Owens who indicated that he believed that the plea was intelligently and voluntarily made (P.C.H. 208–209, 212), Mr. Feingold testified that Mr. LaSane was 'bewildered and upset'. He stated emphatically that LaSane did not seem to understand what was going on and did not understand the charges against him (P.C.H. 104–105):

'This was a community meeting. And what came out of it was that the family felt he'd have a better chance of pleading guilty and getting out of jail sooner than if he didn't plead guilty and appealed . . . it was a meeting, your Honor. It was the majority rules' (P.C.H. 79).

When asked why he allowed the guilty plea to go on, Feingold replied:

'Family wanted it. They were my clients. They hired me. They felt it was best for him. He said whatever the parents wanted to do, he would do, and that's what he did . . . he knew nothing. He was a boy. And this boy was held for a man's crime. He was treated like a man. He should never be. The law has taken this boy and ruined him. And you can take it off the record or leave it on. He shouldn't be where he is now. This case was handled wrong all the way along. The man should have been out two years ago. He was promised to be out, and he's still in jail. That's what I feel.'

Feingold went on,

'This was a good boy. He never spit on the sidewalk in his life. And when his parents told him to do something, he did it' (P.C.H. 105–106).

.    .    .    .    .

Feingold stated that after a decision was made to have LaSane plead guilty, the boy was 'told to say, yes, and smile to every question that he was asked and to say that he understood' (P.C.H. 95–96). As to the answers to the questions posed to LaSane during the colloquy, Feingold stated, 'it wasn't him that was admitting to this. It was his father and stepfather and mother. They decided for him what he would do' (P.C.H. 102)."

(appellant's brief, pp. 16–18) (footnote omitted).

In my view the portions of appellant's brief quoted above are sufficient to present this Court with the question of trial counsel's effectiveness for not assuring that appellant's decision to plead guilty was knowingly, intelligently, and voluntarily made.

We have held that a guilty plea cannot be knowingly, intelligently, and voluntarily entered unless the record of the guilty plea hearing demonstrates a factual basis for the plea. Absent an on-the-record colloquy demonstrating such facts, an appellate court cannot conclude that the accused possessed an understanding of the law as it relates to those

facts. *Commonwealth v. Thompson,* 466 Pa. 15, 351 A.2d 280 (1976).

Federal constitutional law mandates that a person pleading guilty be aware of the nature of the charges against him. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Commonwealth v. Holmes,* 468 Pa. 409, 364 A.2d 259 (1976); *Commonwealth v. Ramos,* 468 Pa. 404, 364 A.2d 257. As Mr. Justice Stevens, speaking for the majority of the Court, stated:

> "[A guilty] plea cannot support a judgment of guilt unless it was voluntary in a constitutional sense. And clearly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charges against him, the first and most universally recognized requirement of due process.'"

*Henderson v. Morgan, supra,* 426 U.S. at 644, 96 S.Ct. at 2257, quoting from *Smith v. O'Grady,* 312 U.S. 329, 344, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941). The standards established by Pa.R.Crim.P. 319(a) and *Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974) ensure that our courts meet this constitutional imperative.

Appellant here contends that the on-the-record guilty plea colloquy fails to establish a factual basis for the entry of the guilty plea. At the guilty plea hearing, appellant was asked if he understood that he had been indicted for murder. The indictment was not read. Appellant was asked only if he "did, in fact, kill [the victim] on October 19, 1971." In *Thompson,* the only such factor elicited during the guilty plea was that the defendant had fired a shot killing the victim. In *Thompson,* we said:

> "Thus, the first deficiency in this colloquy is that the judge failed to have elicited from appellant the facts he was admitting in pleading guilty. From this colloquy it is not clear that any criminal liability should attach. Murder requires more than the mere act of killing, it is essential that the killing be accompanied by malice. *Commonwealth v. Taylor,* 461 Pa. 557, 337 A.2d 545 (1975);

*Commonwealth v. Boyd*, 461 Pa. 17, 334 A.2d 610 (1975); *Commonwealth v. Coleman*, 455 Pa. 508, 318 A.2d 716 (1974); *Commonwealth v. McFadden*, 448 Pa. 277, 292 A.2d 324 (1972). When the judge accepted the plea of guilt, she was only certain that appellant admitted causing the death of the victim. There was, however, absolutely no basis to make any determination as to whether he was admitting a malicious killing.

> " 'Because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.' " *Boykin v. Alabama*, 395 U.S. 238, 243, n. 5, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, n. 5 (1969), quoting *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969)." (Footnote omitted.)

466 Pa. at 19, 351 A.2d at 282.

At a minimum, trial counsel's obligation to an accused who indicates a desire to plead guilty to criminal charges, includes an obligation to assure that any such plea is entered voluntarily. Failure to insure that the accused possesses sufficient understanding of the law in relation to the facts to assure that the plea is voluntary, constitutes ineffective assistance of counsel and requires that the judgment of sentence be reversed and a new trial granted.

Judgment of sentence should be reversed and a new trial granted.