420 A.2d 653

## COMMONWEALTH of Pennsylvania

v.

## Gary ALLEN, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 16, 1979.

Filed June 20, 1980.

operation or use of a vehicle or to the regulation of traffic results in death).

502

Helen R. Kotler, Pittsburgh, for appellant.

Robert L. Eberhardt, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

SPAETH, Judge:

This is an appeal from an order denying relief under the Post Conviction Hearing Act. 19 P.S. §§ 1180–1 *et seq.* (1979–80 Supp.).

On August 28, 1975, appellant pleaded guilty to theft and receiving stolen goods, as charged by Indictment No. CC–7504840, and to theft, receiving stolen property, and possession of instruments of crime, as charged by Indictment No. CC–7505230. On October 14, 1975, he was sentenced to a term of imprisonment of not less than six months nor more than two years for the offenses charged in the first indictment, and to a term of not less than two nor more than five years for the offenses charged in the second indictment, the sentences to run consecutively. Appellant did not petition to withdraw his pleas, and no direct appeal was filed. On October 17, 1977, appellant filed *pro se* a PCHA petition alleging, *inter alia,* that his guilty pleas had been unlawfully induced, that the colloquy preceding the pleas had been inadequate, and that he had been denied effective assistance of counsel. On July 5, 1978, counsel was appointed to represent appellant, and on November 15, 1978, a hearing on the petition was held.[1] On November 17, the lower court denied the petition. The court's order was noted on the backs of the indictments, and was set forth in a separate document, as required by Pa.R.A.P. 301(b). The order, however, was not entered upon the lower court's docket, as required by Pa.R.A.P. 301(a), nor, at least so far as the record shows, was notice of the order mailed or delivered to appellant or his counsel until December 14, 1978, the day the hearing judge wrote to appellant's counsel informing her of the order. Appellant's counsel represents in her brief that until she received the court's letter, she was unaware that the court had denied the petition. After receiving the letter, she consulted appellant, and notice of appeal was filed

1. At the hearing, appellant's counsel asked the court to treat appellant's petition both as a petition seeking relief under the Post Conviction Hearing Act and as a petition to withdraw his guilty pleas. The court immediately denied the request to withdraw the pleas.

on December 26, 1978, the day the notice was received and stamped by the clerk of the lower court. Pa.R.A.P. 905(a).

■ As an initial matter, we reject the Commonwealth's assertion that this appeal must be quashed because more than thirty days elapsed after the lower court's denial of appellant's PCHA petition before appellant filed notice of appeal. *See* Pa.R.A.P. 105(b), 903(a). Pa.R.A.P. 108(a) provides in pertinent part:

> Except as otherwise provided in this rule, in computing any period of time under these rules involving the date of entry of an order by a court or other government unit, the day of entry shall be the day the clerk of the court or the office of the government unit mails or delivers copies of the order to the parties, or if such delivery is not otherwise required by law, the day the clerk or office of the government unit makes such copies public.

There is no evidence that the lower court made copies of its order public, and indeed, to have attempted to serve notice in this manner upon appellant would have been inappropriate.[2] Thus, under this provision, the lower court's order could not have been entered before December 14, the day the lower court mailed notice of the order to appellant's counsel. Since appellant filed his notice of appeal within the 30 days of that date, the appeal was timely. *See generally Purdy's Estate*, 447 Pa. 439, 291 A.2d 93 (1972); *Nixon v. Nixon*, 329 Pa. 256, 198 A. 154 (1938); *Sharpe v. Unemployment Comp. Bd. of Review*, 28 Pa.Cmwlth. 271, 368 A.2d 1344 (1977); *Pioneer Finance Co. v. Commonwealth Securities Comm'n*, 17 Pa.Cmwlth. 366, 332 A.2d 565 (1975).[3]

**2.** The clause providing for notice through making copies of the order public appears to be addressed primarily to the issuance of orders by governmental agencies. *Compare* 1 Pa.Code § 31.13 (1980).

The last sentence of Pa.R.A.P. 108(a), which provides, "The day of the entry of an order may be the day of its adoption by the court or other government unit, or any subsequent day, as required by the actual circumstances," does not address the situation presented by this case.

**3.** Technically, because the order denying appellant's petition has never been entered upon the lower court's docket, we should either

■ Without doubt, the lower court's colloquy preceding the entry of appellant's guilty pleas was defective. Nowhere did the court advise appellant of the legal elements of the offenses with which he was charged.[4] The Commonwealth concedes this defect, but maintains that vacation of appellant's guilty pleas would be inappropriate because, according to the Commonwealth, at the time the pleas were entered, an on–the–record explanation of the elements of the crime charged was unnecessary to the entry of a valid guilty plea.[5] This argument is frivolous.

In *Commonwealth v. Ingram*, 455 Pa. 198, 203–04, 316 A.2d 77, 80 (1974), which was decided over a year and a half before appellant's guilty plea hearing, the Supreme Court held:

While it is permissible for a defendant to enter a valid guilty plea even if he does not expressly admit every element of the crime, a valid guilty plea may not be

remand to perfect the record or quash this appeal without prejudice to appellant's filing a subsequent appeal once the order has been entered. In the interest of judicial economy, however, we shall exercise our power under Pa.R.A.P. 105(a) and regard as done that which ought to have been done.

4. During the colloquy, the court merely listed the charges, as follows:
   THE COURT: Now, you understand what you are charged with on all these different indictments. Mr. Allen, you were charged on one indictment with theft, receiving stolen property, and possession of instruments of crime. On the other indictment you were charged with theft and receiving stolen property.
   MR. ALLEN: Yes, sir.
   THE COURT: Do you understand this?
   MR. ALLEN: Yes, I do.
   N.T. at 4.
   Later in the colloquy the court queried:
   THE COURT: And why are you pleading guilty? Mr. Allen?
   MR. ALLEN: Because I done it.
   N.T. at 13.

5. The Commonwealth cites our decision in *Commonwealth v. Felder*, 246 Pa.Super. 324, 370 A.2d 1214 (1976), in support of this argument. The Commonwealth has misread our decision. In *Felder*, we recognized that the lower court's failure to explain in understandable terms the elements of the crimes charged constituted reversible error. We were precluded, however, from reversing on this ground because counsel had failed to raise the issue in the lower court or on appeal. 246 Pa.Super. at 336, 370 A.2d at 1219.

accepted in the absence of a demonstration of defendant's understanding of the charges. . . .

. . . In order to demonstrate that a defendant possesses such understanding, he certainly must be told more than just that he has been charged with murder or robbery, for example. While such terms clearly connote some meaning to the layman, this meaning does not always embrace the basic legal elements of the crime. If this were not the case, there would be no need for instructions to a jury on such points, for certainly, an average defendant cannot be presumed to understand more than an average juror. Thus, for an examination to demonstrate a defendant's understanding of the charge, the record must disclose that the elements of the crime or crimes charged were outlined in understandable terms.

In *Commonwealth v. Kulp*, 476 Pa. 358, 363, 382 A.2d 1209, 1212 (1978), the Court held that "[f]or pleas entered after our decision in *Ingram*, there can be no excuse for a hearing court to have failed to recognize the need of an adequate *on–the–record colloquy* reflecting a knowledgeable and intelligent waiver." (Original emphasis.) Thus, the Supreme Court and this court have consistently held that a guilty plea entered after the decision in *Ingram* is not valid without a demonstration of the defendant's understanding of the charges, which demonstration must include an on–the–record explanation of the elements of the offenses charged. *See Commonwealth v. Hare*, 486 Pa. 123, 404 A.2d 388 (1979); *Commonwealth v. Tabb*, 477 Pa. 115, 383 A.2d 849 (1978); *Commonwealth v. Willis*, 471 Pa. 50, 369 A.2d 1189 (1977); *Commonwealth v. Hunter*, 468 Pa. 7, 359 A.2d 785 (1976); *Commonwealth v. Minor*, 467 Pa. 230, 356 A.2d 346 (1976); *Commonwealth v. Schork*, 467 Pa. 248, 356 A.2d 355 (1976); *Commonwealth v. Dilbeck*, 466 Pa. 543, 353 A.2d 824 (1976); *Commonwealth v. Davis*, 267 Pa.Super. 118, 406 A.2d 547 (1979); *Commonwealth v. Buhl*, 262 Pa.Super. 178, 396 A.2d 704 (1978); *Commonwealth v. Blackwell*, 258 Pa.Super. 121, 392 A.2d 714 (1978); *Commonwealth v. Stolle*, 254 Pa.Super. 483, 386 A.2d 53 (1978); *Commonwealth v. Cute*,

249 Pa.Super. 492, 378 A.2d 403 (1977); *see also* Official Comment to Pa.R.Crim.P. 319(a).

The Commonwealth also maintains that the lower court's failure to apprise appellant of the legal elements of the charges was harmless error because appellant had pleaded guilty to other charges in another case. Even assuming that we can look beyond the lower court's colloquy to other parts of the record to see whether appellant in fact knew the legal elements of the crimes to which he was pleading guilty, *see Commonwealth v. Frankhouser*, 269 Pa.Super. 319, 409 A.2d 909 (1979) (Opinion in Support of Reversal), an issue that we need not decide, the record does not identify the charges to which appellant had pleaded guilty in the other case, or the adequacy of the colloquy at that proceeding. The Commonwealth's argument thus falls of its own weight.

Appellant's objection to the guilty plea colloquy, of course, could have been raised in a petition to withdraw his pleas, and if that was unsuccessful, on a direct appeal. Since the objection was not so raised, it is waived unless appellant demonstrates extraordinary circumstances precluding waiver. *E. g., Commonwealth v. LaSane*, 479 Pa. 629, 389 A.2d 48 (1978); *Commonwealth v. Manning*, 263 Pa.Super. 430, 398 A.2d 212 (1979); *Commonwealth v. Blackwell, supra*; 19 P.S. §§ 1180–3, –4. Appellant has alleged the ineffectiveness of his trial counsel, which, if proved, is an extraordinary circumstance precluding waiver. *E. g., Commonwealth v. Holmes*, 468 Pa. 409, 364 A.2d 259 (1976); *Commonwealth v. Brown*, 269 Pa.Super. 498, 410 A.2d 366 (1979).[6]

Appellant's trial counsel (an assistant public defender) did not testify at the hearing on appellant's PCHA petition. Rather, it was stipulated that trial counsel could

**6.** There is no suggestion that appellant's claim of trial counsel's ineffectiveness has been waived. Appellant was represented by counsel other than trial counsel for the first time during the PCHA proceedings below. *See Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977); *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

neither locate his file on appellant's case nor recall the specifics of the case. In these circumstances, we are unable to discern any reasonable basis designed to effectuate appellant's interest in counsel's failure to ensure that appellant's pleas were knowing and voluntary, by insisting that the court explain as part of the guilty plea colloquy the elements of the offenses charged. We therefore find that counsel's assistance at the guilty plea hearing was ineffective. *Commonwealth v. Davis, supra; Commonwealth v. Manning, supra; Commonwealth v. Bruno*, 272 Pa.Super. 562, 416 A.2d 1039 (1979).

The Commonwealth argues that trial counsel cannot be deemed ineffective because appellant did not ask him to file an appeal. This argument is without merit. Trial counsel was responsible for protecting appellant's rights at the guilty plea hearing by ensuring that his guilty plea colloquy was complete. Having failed in this duty, counsel was required to inform appellant that the colloquy was fatally defective; that he had the right to petition the lower court to withdraw his pleas; and that if the lower court refused his petition, he had a meritorious claim for appeal. There is no evidence that counsel did any of these things. Indeed, appellant testified that after the entry of the pleas but before sentencing he asked counsel to have the pleas withdrawn, but counsel ignored him. After his sentencing, appellant did not see trial counsel again.

The Commonwealth's position is, in essence, that appellant should have recognized, without assistance of counsel, the defect in the guilty plea colloquy and his counsel's ineffectiveness. The law does not expect so much of appellant, a layman. Indeed, we have held that "to require a criminal defendant to recognize the ineptitude of his lawyer would be unreasonable." *Commonwealth v. Wilks*, 250 Pa.Super. 182, 191, 378 A.2d 887, 891 (1977), *quoting Commonwealth v. Carter*, 463 Pa. 310, 314, 344 A.2d 846, 848 (1975). The law, however, does expect more of appellant's counsel—both at the guilty plea hearing, and later in advising appellant of his right to attack his pleas. The ABA Project on Standards

For Criminal Justice, Standards Relating to Criminal Appeals § 2.2(b) (Approved Draft 1970), which has been cited with approval in *Commonwealth v. Greer,* 455 Pa. 106, 109 n. 3, 314 A.2d 513, 514 (1974), and *Commonwealth v. Beatty,* 474 Pa. 104, 114, 376 A.2d 994, 999 (1977) (ROBERTS, J., concurring), states:

> (b) Defense counsel is uniquely situated and should take it as his duty to advise a defendant on the meaning of the court's judgment and his right to appeal and on the possible grounds for appeal and the probable outcome of appealing. While counsel should do what is needed to inform and advise his client, the decision whether to appeal, like the decision whether to plead guilty, must be the defendant's own choice.

Commentary to this section further outlines counsel's function:

> Beyond awareness of the impact of the judgment, a defendant should have competent, professional assistance to guide his thinking about the possibility of appellate review. The available grounds for appealing should be explored by the lawyer and discussed fully with the defendant, to the end that the latter can make an intelligent judgment about seeking further review. If, after deliberation, the defendant decides to appeal, the lawyer should be responsible for setting the necessary machinery in motion.

Adherence to these standards is essential in a case such as the present one where a defendant's trial rights have been abridged and the defendant thus possesses claims that if raised, will require the reversal of his convictions. Further, we have held that the failure of trial counsel to pursue meritorious issues on appeal usually constitutes ineffective assistance of counsel, since in most instances it is impossible to demonstrate reasonable grounds for not appealing such issues. *Commonwealth v. Blackwell, supra; Commonwealth v. Bable,* 248 Pa.Super. 496, 375 A.2d 350 (1977); *Commonwealth v. Danzy,* 234 Pa.Super. 633, 340 A.2d 494 (1975).

The Supreme Court's recent decision in *Commonwealth v. Newell*, 486 Pa. 474, 406 A.2d 733 (1979), is not contrary. In *Newell*, a majority of the court (NIX, J., and MANDERINO, J., dissented) held that the defendant could not attack in a PCHA proceeding his counsel's competence at his guilty plea hearing because the record showed that the defendant knowingly decided to enter his guilty plea and, satisfied with the result, elected not to file a direct appeal. *See* Concurring Opinion by ROBERTS, J., joined by EAGEN, C. J. Here, there is no evidence that appellant was satisfied with the sentences he received, or that he elected not to appeal. There is only the evidence of counsel's failure to advise appellant of his rights, to file a petition to withdraw the pleas, and to file an appeal.

Order reversed and case remanded for trial.[7]

VAN der VOORT, J., files a concurring and dissenting opinion.

VAN der VOORT, Judge, concurring and dissenting:

I concur in the result reached in this case but I respectfully dissent from a portion of the text in the Opinion.

Said Opinion cites and discusses the case of *Commonwealth v. Ingram*, 455 Pa. 198, 203–204, 316 A.2d 77 (1974). Said Opinion quoting from *Ingram* states that "While such terms [murder or robbery] clearly connote some meaning to the layman, this meaning does not always embrace the basic legal element of the crime. If this were not the case, there would be no need for instructions to a jury on such points, *for certainly, an average defendant cannot be presumed to understand more than an average juror ...*" [Emphasis supplied].

---

7. Because of our disposition, we do not reach appellant's claims that the guilty plea colloquy was defective because the factual basis of the offenses was not presented until after his pleas were accepted by the court, and that because of trial counsel's ineffectiveness appellant believed that he was to receive concurrent sentences and therefore waived his right to advance notice of trial on Indictment No. CC–7505230.

In my experience, an average defendant knows far more about the crime or crimes with which he is charged than does the average juror. He has a trained expert lawyer to explain to him the nature and elements of said crime or crimes. He can counsel with his expert counsel and ask him questions about the offenses with which he is confronted. He can discuss any part of his case with his skilled counsel. Prior to the trial judge's charge, the average juror on the other hand has no expert with whom he can consult nor does he have anyone skilled in the legal field whom he may question and from whom he can receive guidelines as to the nature of and elements of the crime or crimes the juror is considering.[1] The defendant knows what penalties may be imposed for his crimes should he be found guilty; the average juror does not know that. I think it is a fallacy to state that "an average defendant cannot be presumed to understand more than an average juror." I do not like to see our Court giving imprimatur to such an inaccurate statement.

For these reasons I dissent to that part of the text in the majority opinion.

---

1. The average juror is reluctant to question a trial judge about the legal points involved in a case.