## S. T. WILSON ET AL. v. JOS. VanLEER ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.

|127  371|
|164   71|

127     371
25 SC  231

127    371|
41SC²183|
41SC²185|

Argued May 21, 1889—Decided June 28, 1889.

[To be reported.]

(*a*) A witness, called to prove the signature of an alleged testator to a testamentary paper, testified that he had seen the testator write his name twice to letters thirty-two years, and once as an indorsement upon a check twenty-three years, prior to the time when he was called to testify.

1. There being no subsequent evidence raising any question as to the truth of the facts so stated, the competency of the witness to express his opinion as to the signature was a matter clearly for the court, and it was not error to refuse to allow the jury to review the ruling of the court thereon.

2. The ruling that the witness was competent to testify concerning the handwriting, was within the line of the authorities, but, considering the untrustworthiness of opinions on handwriting in general, such evidence ought to be guarded with caution.

3. The limit within which the witness must have seen the writing done, must depend upon his intelligence, his habits of observation, and the

apparent strength and confidence of his memory, which must be passed upon in the first instance by the trial judge.

4. In an argument to the jury, counsel may refer to the almanac to show that a certain day of the month given in the testimony of a witness, was or was not a certain day of the week, though the almanac was not proved and put in evidence, judicial notice being taken of the fact, without evidence.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 155 January Term 1889, Sup. Ct.; court below, No. 29 December Term 1884, C. P.

On August 22, 1885, an issue devisavit vel non, wherein Joseph VanLeer and Caroline, his wife, in right of said Caroline, were plaintiffs, and Sidwell T. Wilson and Needham M. Wilson, executors of the will of Needham Wilson, were defendants, was formed to try whether or not a certain testamentary paper was a codicil to the last will and testament of Needham Wilson. The issue had been directed by the Orphans' Court upon an appeal by said executors from the decree of the register of wills, admitting said paper to probate.

At the trial on October 15, 1888, the plaintiffs put in evidence the will of Needham Wilson, dated March 2, 1865, and duly admitted to probate on September 28, 1872. They then put in evidence, under objection and exception to the defendants, the record of the appeal from the decree of the register, dated June 23, 1883, admitting to probate the alleged codicil.

Margaret Manahan, called by plaintiffs, testified that she had known Needham Wilson, deceased, from the time she was a little girl until he died; that she saw him write and sign his name to the paper dated August 13, 1865, shown to her and marked for identification; that he came to her house on that day and asked for her sister Caroline, now Mrs. VanLeer; that she told him her sister had gone to the country, when he asked her for paper, pen and ink; that she had no paper, and gave him a pen and ink and got him a " copy-book," from which he tore a piece of paper and wrote thereon the instrument in question and signed it; that he then folded up the paper, gave it to witness, and directed her to give it to Caroline when she returned. On cross-examination, the witness stated that when

### Statement of Facts.

the paper was written and signed, only herself and her little boy were at home, her husband being absent, railroading; that he got off only on Sundays, and he wasn't at home at this time, because it wasn't his time to be off.

Cornelius Carman, called by the plaintiffs, testified that he was a brother of Caroline VanLeer, and had known Needham Wilson from his own boyhood; that when the witness was ten or eleven years old, which was thirty-two years before the trial, he was living with Mr. Wilson and saw him write two or three letters to the witness's father; that in October, 1865, the witness was with Mr. Wilson at a hotel in Lancaster, and saw him write a memorandum of articles he wished to purchase and indorse his name on a check, and since then witness had not seen Mr. Wilson write. The witness was subjected to a rigid cross-examination, and testified to his belief that the signature and the whole of the paper shown him was in the handwriting of Needham Wilson.

The plaintiffs then offered the paper in evidence.

Objected to by defendants: We do not think it has been proven by two witnesses as prescribed by law.

By the court: Objection overruled, offer admitted; exception.[1]

The paper as then read to the jury was as follows: *

"August 13, 1865.

"I give thes fiew lines to Caroline Carman to show that I want her to have the sum of twelve hundred dollars at my death she livd with mee A number of years And got verry little for it so i thought it rite to leave her This little sum to to be paid out of my home property

from NEEDHAM WILSON."

The plaintiffs then rested.

The defendants called a number of witnesses whose testimony tended to prove that the paper in question was not in the handwriting of Needham Wilson, nor executed by him.

---

* On August 18, 1877, nearly five years after the death of Needham Wilson, Caroline VanLeer, formerly Carman, brought assumpsit upon the above instrument as an obligation for the payment of money. A judgment obtained by the plaintiff in the court below was reversed by the Supreme Court on June 4, 1883, on the ground that the instrument was not an obligation to pay money, but a testamentary paper: Wilson v. VanLeer, 103 Pa. 600.

Charge of Court below.

In his argument to the jury on behalf of the defendants in the issue Mr. Brown said:

I now offer to show to the jury an almanac, and to call their attention to the fact that the 13th of August, 1865, came on Sunday.

Objected to.

By the court: Objection sustained, offer refused; exception.[5]

The court, PATTERSON, J., charged the jury saying, inter alia:

The law of Pennsylvania says: "Every will shall be in writing, and unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof, or by some person in his presence, and by his express direction; and in all cases shall be proved by the oaths or affirmations of two or more competent witnesses; otherwise, such will shall be of no effect." The paper before you is signed, as you have been shown, by a name; by the name Needham Wilson. Now the question for you is, is the name of Needham Wilson to that paper the genuine signature of Needham Wilson. The plaintiffs called two witnesses, whose evidence you heard, who swore that that signature is genuine; one of them testified that she saw Needham Wilson sign the very signature to that paper. [These two witnesses, Margaret Manahan and Cornelius Carman have been admitted by the court and held to be competent witnesses. They are competent witnesses.][4] Of course, their credibility is for you, the jury. The credibility of all witnesses in every case tried by a jury is for the jury. That is, whether they are truthful, or whether you will believe them. The two competent witnesses need not be subscribing witnesses; that is, their names need not be subscribed to the will or paper. The signature of the alleged maker of the paper may be proved by witnesses who have knowledge of his handwriting and who were well acquainted with it, as was one witness who was called here in this case.

\* \* \* \* \* \* \* \*

The defendants have requested the court to charge:

1. No will or codicil is of any effect unless proved by the oaths or affirmations of two or more competent witnesses.

There must be at least two competent witnesses to prove every will or codicil.

Answer: We say, yes, to that. There must be two witnesses.

2. In the case now before the jury, the testimony of Margaret Manahan is in itself insufficient to prove the execution of the alleged codicil, and with nothing else but it to guide them, the verdict must be in favor of the defendants.

Answer: Yes. Because, as we have stated, there must be two competent witnesses to validate a will.

3. If the jury do not believe Cornelius Carman is a competent witness to prove the execution of the alleged codicil, the verdict must be in favor of the defendants.

Answer: We deny that point as stated. The belief of the jury as to Cornelius Carman being a competent witness has nothing to do with his competency. Competency means the legal fitness of a witness to be heard on the trial of a cause. It is a legal question, and the court is the sole judge of his competency. The jury has nothing to do in deciding whether he is competent. If the court think he is so interested, or in a position that he cannot testify, they will rule him out; but if they decide he is a competent witness, then that makes his testimony come before you, like that of any other witness. The court admitted Cornelius Carman as a competent witness; his testimony, however, is for the jury like any other witness; his credibility is for them to determine.[2]

4. Unless the jury believe that two competent witnesses have proved the execution of the alleged codicil, the verdict must be in favor of the defendants.

Answer: Yes. Two competent witnesses; that is so. As we have already stated, competency means a legal witness, and the court is the sole judge of his or her competency. In this case the court has received him and permitted him to testify as a competent witness. The jury's belief of his testimony cannot determine his competency. That is a duty to be discharged by the court. They may, however, or may not believe his testimony. You may or you may not believe it. His testimony with that of Mrs. Manahan constitute the two witnesses to this little will.[3]

The jury returned a verdict in favor of the plaintiffs. A

rule for a new trial having been discharged, judgment was entered on the verdict, when the defendants took this writ, assigning as error:

1. The admission of the plaintiffs' offer.[1]
2, 3. The answers to the defendants' points.[2] [3]
4. The portion of the charge inclosed in [ ] [4]
5. The refusal of the defendants' offer.[5]

*Mr. J. Hay Brown* (with him *Mr. S. H. Reynolds*), for the plaintiffs in error:

1. Two or more competent witnesses are required in all cases. " Each must separately depose to all facts necessary to complete the chain of evidence, so that no link of it may depend on the credibility of but one: " Derr v. Greenawalt, 76 Pa. 239. Applying this rule, how can the testimony of Carman be received, as proving the execution of the codicil? It is to be considered independently of Margaret Manahan's testimony, and if insufficient of itself, nothing that she testified to can help it. The court held that Carman was competent. He may have been competent to testify, but his testimony was not competent to prove the fact he was called to establish. Carman was not only to be a competent witness, he was to be " complete: " Carson's App., 59 Pa. 493; and, having fallen short, the proof of execution was not up to the statutory standard, and the judgment of the court below on that point should be reversed.

2. The court properly told the jury that the credibility of Mrs. Manahan was for them; that unless they believed her, the execution of the paper had not been proved as required by the statute. August 13, 1865, came on Sunday, when, according to her testimony, her husband ought to have been at home. Had the counsel been allowed to show that fact to the jury, the verdict rendered after a deliberation of two days might have been different. That the court will take judicial notice of an almanac, and that it need not be formally offered in evidence, is a doctrine well recognized: Starkie on Ev., 738*. The error on this point was most palpable, and the effect of it hurtful to the defendants.

*Mr. D. G. Eshleman* and *Mr. A. Herr Smith*, for the defendants in error:

1. "There are two modes of acquiring knowledge of the handwriting of another, either of which is universally admitted to be sufficient to enable a witness to testify to its genuineness. The first is, from having seen him write. It is held sufficient for this purpose that the witness has seen him write but once, and then only his name. The proof in such case may be very light, but the jury will be permitted to weigh it:" 1 Greenl. Ev., § 577. And see Shitler v. Bremer, 23 Pa. 413; Taylor v. Sutherland, 24 Pa. 335.

2. If the offer of the almanac had been made in time, it would have been irrelevant. It does not contradict the witness, nor even tend remotely in that direction. We deny that it is a principle well recognized, that the court will take judicial notice of an almanac. There is no American case nor elementary book that recognizes the principle. It is not so stated in Starkie on Evidence, *738, or on any other page. In a note to said page, some old English cases are referred to, which intimate that the court will take judicial notice of the calendar, but even there nothing is said about an almanac.

Opinion, Mr. Justice Mitchell:

The competency of Cornelius Carman was in the first instance clearly a matter for the court, and no subsequent evidence having raised any dispute of fact upon it, the learned judge was right in saying that the court was the sole judge of competency, and refusing to allow the jury to review the ruling. Had the facts upon which the judge held him prima facie competent been denied or contradicted, it might have been proper to submit the whole matter to the final decision of the jury: Lee v. Welsh, 1 W. N. 453; but there was no such conflict as made that course necessary.

The learned judge was also within the line of authorities, in holding that Carman had sufficient knowledge of Wilson's handwriting to make him competent to testify concerning it. It is said to be sufficient if the witness has seen the party write but once, and then only his name: 1 Greenl. Ev. § 577; and probably no higher standard can be fixed for a definite rule, though, considering the untrustworthiness of opinions on handwriting in general (see note of Chief Justice Redfield to his edition of Greenleaf, vol. 1, sec 578), such evidence

ought to be guarded with great caution.    Nor in the nature of things is it possible to fix any arbitrary limit of time within which the witness must have seen the writing done.    That must depend on his intelligence, his habit of observation of such matters, the apparent strength and confidence of his memory, etc., which must be passed upon in the first instance by the trial judge.    Carman's knowledge seems not only to have been extremely stale, but of the narrowest extent, and if the learned judge had held that it was too remote and unreliable to qualify him, we should not have been disposed to disagree with him. But the matter was within his discretion, and his conclusion was, as already said, within the line of the authorities.    It was therefore for the jury and not for us to determine the weight to which the testimony should be entitled.    The assignments of error in relation to Carman's testimony are therefore not sustained.

We are obliged however to hold that the court erred in refusing to permit the counsel for defendants below to refer to the almanac to show, in support of his argument against the testimony of Margaret Manahan, that a certain date in 1865 fell upon Sunday.    All of the authorities agree that this is one of the matters that do not require to be proved, but are taken judicial notice of, without evidence.    "Neither is it necessary to prove . . . . . the coincidence of days of the week with days of the month:" 1 Greenleaf, § 5; and see Starkie on Evidence, pt. 3, sec. 20 (p. 738 of 10 Am. ed.)    "It is wholly immaterial whether the facts of public and general history, and their dates, are recognized by the court, sua sponte, the chronicles or almanacs being used merely to aid the memory; or whether they will remain unnoticed until suggested by the parties and verified by the books; or whether the books themselves are adduced by the parties as instruments of evidence; the process and the result being in each case the same:" 3 Greenleaf, § 269.

The mere mode of introducing the almanac seems to vary, as indicated by the last extract from Greenleaf, but as all the authorities agree that no proof is necessary, it follows that it is not required to be put in evidence at all.    "The almanac in such cases is used, like the statutes, not strictly as evidence, but for the purpose of refreshing the memory of the court and

jury:" State v. Morris, 47 Conn. 179.  "The almanac is part of the law of England," POLLOCK, C. B., in Tutton v. Darke, 5 H. & N. 649.

In Hanson v. Shackleton, 4 Dowl. 48, there was a rule to set aside a writ, on the ground that it was dated on Sunday, and the report proceeds:

"COLERIDGE, J.  Have you an affidavit showing that the day on which this writ is dated was a Sunday?

"BAYLY.  The affidavit does not state that it was Sunday, but the day of the month being given the court is bound to take judicial notice on what day of the week that day fell. C. A. V.

"COLERIDGE, J.  I have consulted the other judges and they are of opinion I ought to take judicial notice of what the day was on which this day of the month fell.  Rule absolute."

So in Reed v. Wilson, 41 N. J. Law, 29, there was a declaration on a note dated August 12th, at four months, and on demurrer assigning, inter alia, that the narr. showed demand and protest on December 14th, one day too soon, the court took judicial notice that December 15th was Sunday, and therefore that the demand was made on the proper day.

In R. R. Co. v. Lehman, 56 Md. 226, it was held that "it is the duty of the court to notice the days of the week on which particular days of the month fall; and hence we know without other averment (on demurrer) that the 28th of July was Sunday."

And in McIntosh v. Lee, 57 Ia. 358, it was said by the court, "the petition alleges that the defendant entered into the written lease on March 10, 1878.  Courts take judicial notice that the tenth day of March, 1878, was Sunday.  The petition therefore in effect alleges that the lease was executed on Sunday," and it was therefore held that under the pleadings evidence was not admissible that the lease was executed on Monday.

These authorities, and none have been found in opposition to them, show clearly, that however often departed from as a matter of convenience, the rule is that matters of which judicial notice is taken, including the dates in the almanac, do not require to be put in evidence at all.

It is argued for the defendant in error that the fact of August 13th having been Sunday, did not necessarily contra-

dict Mrs. Manahan, and therefore that even if the court below committed an error it was an immaterial one for which the judgment should not be reversed. But there was an apparent contradiction, which at least required explanation, and in a case where the evidence in support of the plaintiff's case was so meagre, it is impossible to say that even a slight doubt thrown on the testimony of the main witness, would not have turned the scale in the minds of the jury.

It is also argued that the almanac having been brought forward at so late a stage in the case, deprived the plaintiff below of the benefit of an argument upon it by one of her counsel. But in this respect it was like any other argument or illustration which counsel may make towards the end of a case. If it has not been anticipated it is a surprise, and that is a risk which parties must encounter in every case. If counsel had run the calculation back himself, so as to show that that day was Sunday, no one could have questioned his right to do so. His reference to the almanac was no more than a reference to the multiplication table, as a labor saving mode of refreshing or confirming knowledge legally presumed to be in everybody's mind. This kind of surprise is one of the dangers incident to every contest, and the only relief against it, is the discretion of the judge, where the new matter or new view may lead to substantial injustice, and is such as could not reasonably have been foreseen, to allow an opportunity of reply, or subsequently to grant a new trial.

Judgment reversed, and venire de novo awarded.