380 A.2d 795

**COMMONWEALTH of Pennsylvania**

v.

**Horace CHARLESTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1976.

Decided Dec. 2, 1977.

312

Paul J. Drucker, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This is an appeal *nunc pro tunc* from judgment of sentence. Appellant, Horace Charleston, was arrested on September 10, 1971, and charged with rape, aggravated robbery

and burglary. On April 5 and 6, 1972, appellant, having waived his right to a jury trial, was tried before a judge and found guilty on all charges. Post-trial motions were denied, and appellant was sentenced to five to fifteen years imprisonment. A direct appeal was taken to this Court, but that appeal was subsequently discontinued on January 16, 1974. Thereafter appellant filed a petition for relief under the Post Conviction Hearing Act[1] alleging, *inter alia*, denial of the right to representation by effective counsel and denial of the right to appeal. An evidentiary hearing was held, at which appellant was represented by counsel other than his trial counsel. The hearing judge, finding that appellant had not authorized the discontinuance of his direct appeal, granted him the right to appeal to this Court *nunc pro tunc*; the other claims in the petition were denied.[2] This appeal followed.

Appellant's sole contention is that he was denied effective assistance of counsel at his trial. We agree and, therefore, reverse the judgment of sentence and grant a new trial.

The convictions arose from an incident which occurred in the early morning hours of September 10, 1971. At trial Carolyn Parker, the complaining witness, testified that she first met appellant in a supermarket on September 1, 1971, when he asked if he could carry her packages to the checkout counter. She encountered appellant again at a bar on the following Monday, and he walked her home. The next evening appellant visited with Miss Parker in her apartment

1. Act of January 25, 1966, P.L. (1965) 1580, § 1 *et seq.*, 19 P.S. § 1180–1 *et seq.* (Supp.1977–78).

2. "[W]here a post-conviction court determines that a petitioner is entitled to a direct appeal, no decision should then be made on other bases alleged therein for post-conviction relief." *Commonwealth v. Webster*, 466 Pa. 314, 319, 353 A.2d 372, 374 (1975) (citations omitted). The Court considered this procedure to be preferable "since it allows all of the complaints that may be raised to be disposed of in one action." *Id.* Thus in *Commonwealth v. Drummond*, 238 Pa.Super. 311, 357 A.2d 600 (1976), we held that the PCHA court was precluded from reaching the merits of appellant's claim of ineffective assistance of counsel once the court granted appellant the right to appeal *nunc pro tunc*.

for a half hour, at which time she told him that she did not want to be bothered with him. Then on Thursday evening, September 9, she saw appellant outside her apartment; she told him that she was getting ready for bed, and appellant left.

Miss Parker further testified that she next saw appellant on Friday morning, approximately 5:00 a.m., when she awoke to find him standing over her bed. She started to scream, but appellant hit her and told her to shut up and open her legs. They struggled, and appellant then placed a knife between her breasts. After they had intercourse, Miss Parker saw who it was. They again had intercourse five minutes later.

Appellant then told Miss Parker to give him her money. She reached over into her pocketbook and gave him a $10.00 bill and some change. When appellant told her that he was going to lock her in the house all day, she started to cry and begged appellant to let her go to work; he agreed after she promised not to call the police. Thereupon Miss Parker got up and started to dress for work. She returned to the bedroom to ask appellant for car fare and lunch money. Miss Parker then left her apartment, about 7:30 a.m., and ran to the apartment of a neighbor, where she called the police. When the police arrived, they accompanied Miss Parker to her apartment. Appellant was discovered sleeping in her bed with the $10.00 bill in one hand and the knife in the other.

Appellant's trial testimony differed from Miss Parker's as follows: He stated that he had known Miss Parker three or four weeks before September 10, and had had intercourse with her on eight or ten prior occasions. On September 9, approximately 9:00 p.m., he stopped by Miss Parker's apartment and told her that he had to go to West Philadelphia. Although appellant did not know what time he would be returning, Miss Parker wanted him to come back and told him to enter her apartment through the apartment next door.

Appellant further testified that he returned to Miss Parker's apartment early Friday morning and entered her bedroom. As he was about to awaken her, she rolled over and started screaming. Miss Parker then recognized him. They had intercourse, not only with her consent, but at her request. Appellant also stated that Miss Parker lent him the $10.00 before she left to go to work, and that she told him to remain and sleep in her bed. He denied knowing anything about the knife.

The defense offered only one other witness, a friend who testified that appellant had brought Miss Parker to her apartment for about fifteen minutes one evening late in August. The trial judge, as factfinder, chose to disbelieve the testimony of appellant and his witness, and returned a verdict of guilty.

■ Appellant now claims that counsel was ineffective when he did not request a continuance or bench warrant to secure the presence, at trial, of Sadie Walton. As indicated, the defense theory was consent. Appellant had informed counsel of the existence of several witnesses who could testify to his familiarity with Miss Parker. One of these witnesses, Miss Walton, was interviewed by an investigator for the Defender's Office. She was subpoenaed, and counsel apparently intended to call her to testify at appellant's trial. Miss Walton, however, did not appear; counsel proceeded without her.

■ In determining the effectiveness of appellant's counsel "[o]ur task . . . encompasses both an independent review of the record, . . . and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). The standard by which a trial attorney's performance is judged is well-established:

"[O]ur inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some*

*reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." (Emphasis in the original.) 427 Pa. at 604–605, 235 A.2d at 352–53; *see Commonwealth v. Moore*, 466 Pa. 510, 353 A.2d 808 (1976); *Commonwealth v. Abney*, 465 Pa. 304, 350 A.2d 407 (1976).

 It is clear that trial counsel's failure to present a possible witness is not per se ineffective assistance of counsel. Counsel need not call every person mentioned by a defendant. *Commonwealth v. Robinson*, 232 Pa.Super. 328, 334 A.2d 687 (1975). Moreover, the failure to call a possible witness will not be equated with a conclusion of ineffectiveness absent some positive demonstration that the testimony would have been helpful to the defense. *Commonwealth v. Hawkins*, 445 Pa. 279, 284 A.2d 730 (1971); *Commonwealth v. Harper*, 233 Pa.Super. 294, 334 A.2d 761 (1975). In *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975), our Supreme Court addressed the issue of whether counsel's failure to call a known witness constituted ineffective assistance:

"If counsel's decision not to secure [the witness'] appearance . . . was based on a reassessment of its worth and a conclusion that it was of little or no value in the posture of this case, then that decision clearly had some reasonable basis designed to effectuate [the client's] interests. In such circumstances, counsel's conduct would not constitute ineffectiveness. See *Commonwealth ex rel. Washington v. Maroney*, supra. Had counsel reached this decision on a basis designed to advance his client's interest, this case would be analogous to those situations in which, as a matter of trial strategy, counsel decides not to call a witness at all. (Citations omitted.)

"If, however, counsel's failure to seek compulsory process to obtain [the witness'] testimony . . . was the

result of sloth or lack of awareness of the available alternatives, then his assistance was ineffective. In a case where virtually the only issue is the credibility of the Commonwealth's witness versus that of the defendant, failure to explore all alternatives available to assure that the jury heard the testimony of a known witness who might be capable of casting a shadow upon the Commonwealth's witness's truthfulness is ineffective assistance of counsel." 460 Pa. at 110–111, 331 A.2d at 443.

At appellant's Post Conviction Hearing Act hearing, it was brought out that Miss Walton was an important witness for the defense. She would have testified that Miss Parker and appellant had been in her presence prior to September 10, and that a previous friendship had existed between the two. Trial counsel stated that he did not remember whether he had requested a continuance or bench warrant when Miss Walton did not appear at trial. No such request, however, appears in the trial record.

In a situation similar to the case at bar, counsel was declared ineffective for having failed to request a continuance when it was learned at trial that his client's alibi witness was not in court to testify. *Commonwealth v. Smith*, 442 Pa. 265, 275 A.2d 98 (1971). "[A] witness to corroborate appellant's alibi would have been the single most important possible addition to appellant's defense." 442 Pa. at 269, 275 A.2d at 100.

We are not called upon here to determine whether or not a continuance or bench warrant would have been granted if counsel had requested one at trial. However, after independently reviewing the record, as we must, we conclude that appellant's ineffective assistance of counsel claim must prevail. Here, the conviction was based almost exclusively upon the credibility of the complaining witness; Miss Walton's testimony may have cast a shadow on her truthfulness.[3] *See Commonwealth v. Abney*, supra; *Commonwealth*

3. Having reviewed the trial testimony of appellant's defense witness (N.T. at 53–66) and its apparent impact, we conclude that Miss

318

*v. Twiggs,* supra. Trial counsel's action, or lack thereof, cannot be said to have been reasonable trial strategy or designed to further his client's interests.

Judgment of sentence reversed and case remanded for a new trial.

WATKINS, President Judge, and VAN der VOORT, J., dissent.

Walton's testimony would not have been merely cumulative in nature.