432 A.2d 1116

COMMONWEALTH of Pennsylvania

v.

**John Michael GAINOR, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1980.

Filed July 24, 1981.

Joseph E. Breman, Kittanning, for appellant.

George R. Kepple, District Attorney, Kittanning, for Commonwealth, appellee.

Before CERCONE, President Judge, and SHERTZ and WIEAND, JJ.

PER CURIAM:

Following his counseled plea of guilty to charges of aggravated assault[1] and criminal trespass,[2] Appellant was sen-

1. 18 Pa.Cons.Stat.Ann. § 2702(a)(1) (Purdon 1979).

2. 18 Pa.Cons.Stat.Ann. § 3503(a)(1) (Purdon Supp. 1981–82). At the time of his arrest, Appellant was also charged with burglary. A nolle

tenced on June 7, 1979, to a term of one to three years at the Diagnostic and Classification Center at Pittsburgh to be followed by five years probation. Thereafter, on November 5, 1979, Appellant filed a P.C.H.A. petition contending, inter alia, that he had been denied effective assistance of plea and sentence counsel. The lower court, after a hearing, entered an order dismissing Appellant's petition, and this appeal followed.

■ It is well-settled in Pennsylvania that counsel's assistance will not be deemed ineffective if the reviewing court is able to conclude that the particular course chosen by counsel had some reasonable basis designed to further the client's interest. *Commonwealth v. Williams*, 273 Pa.Super. 147, 149, 416 A.2d 1132, 1133 (1979) (citing *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604–05, 235 A.2d 349, 352–53 (1967)). Based on the following facts, we are compelled to conclude that there was no reasonable basis for plea and sentence counsel's failure to investigate the possibility of an insanity defense, and we must, therefore, reverse.

On December 13, 1978, Appellant, John Michael Gainor, unlawfully entered the home of Father Thomas Rogers, a priest, and beat him severely. Father Rogers suffered serious injuries to the left eye as a result of this attack, which Appellant allegedly committed because he believed that he was being possessed by the priest.

After his arrest, Appellant was kept in the county jail. While there, he exhibited bizarre behavior that included holding a rectangular piece of metal over his mouth and refusing to bathe. As a result, the Sheriff of the Armstrong County Jail petitioned the lower court to commit Appellant.[3]

A hearing on the petition was held on January 11, 1979. Appellant was represented by his plea and sentence counsel

prosequi was entered to this charge on June 13, 1979, upon motion of the District Attorney.

3. This request was made pursuant to the provision of the Mental Health Procedures Act, Pa.Stat.Ann. tit. 50, § 7304 (Purdon Supp. 1981–82).

at that time. At the hearing, Dr. Roderick McLeod, a psychiatrist who had examined Appellant following his arrest, testified that Appellant had previously been seen by the Family Counseling Center in 1977 and April 1978, that he himself had seen Appellant once in 1978, and that both he and the personnel at the Family Counseling Center felt that Appellant "was quite sick and in need of hospital care at that time." (Mental Health—Mental Retardation Commitment Hearing Tr. at 2–3). Appellant also testified at the hearing and stated that he believed that his attack on the priest was the priest's fault. (MH–MR Tr. at 5).

Following this hearing, Appellant was committed to Mayview State Hospital. A psychological report,[4] based upon testing and observation of Appellant, concludes that, at the time of his admission to the hospital, Appellant's judgment was defective, that he was functioning at a borderline psychotic level and that he was suffering from paranoid schizophrenia. Moreover, Appellant's "reality contact was tenuous," ideas of influence and reference were present, and his prognosis was described as poor.

Following his release from the hospital, Appellant pleaded guilty to the criminal charges and was sentenced. In the petition now before us on .appeal, Appellant contends that the failure of his plea and sentence counsel to explore the possibility of an insanity defense, where both the circumstances of Appellant's behavior and the behavior itself suggested no other course, resulted in a denial of effective assistance of counsel.[5] We agree with Appellant because we

4. The report which is part of the record, is entitled "Mayview State Hospital Regional Forensic Unit Psychological Report." It was completed on January 19, 1979, and transmitted to the Common Pleas Court of Armstrong County on March 27, 1979. Copies of the report were provided to counsel.

5. The test for legal insanity in this jurisdiction is the M'Naughten Rule, which relieves an actor of criminal responsibility if, at the time he committed the act, he did not know the nature and quality of the act he was doing, or if he did know, he did not know that what he was doing was wrong. *Commonwealth v. Hicks*, 483 Pa. 305, 309, 396 A.2d 1183, 1185 (1979).

find from a review of the record that counsel neglected the necessary investigation and preparation of the case.[6]

At Appellant's P.C.H.A. hearing, plea and sentence counsel testified that although Appellant had asked him about the possibility of an insanity defense (P.C.H.A. Tr. at 85), there was never any discussion between them regarding Appellant's ability to make judgmental decisions, to distinguish right from wrong, or to realize the nature of his decisions, acts and intentions. (P.C.H.A. Tr. at 89). Further, despite having received a copy of the Mayview Hospital report, plea and sentence counsel did not attempt to obtain an independent evaluation of Appellant or to investigate the possibility of an insanity defense. (P.C.H.A. Tr. at 90). Instead, counsel personally concluded that Appellant was not insane and that insanity "was not an avenue to explore or to proceed under." (P.C.H.A. Tr. at 96).

Plea and sentence counsel did state at the P.C.H.A. hearing that he chose not to pursue an insanity defense because he believed that Appellant would not have fared well in a jury trial in a predominantly Catholic community where the charge was aggravated assault upon a parish priest. (P.C. H.A. Tr. at 79). But, counsel also testified that he did not discuss with Appellant his own personal judgments about a jury trial and its effect upon Appellant's case. He did not discuss these considerations with Appellant because he believed such decisions to be solely within counsel's province (P.C.H.A. Tr. at 84) and because he had always operated under the assumption that he did not "have to discuss all these legal aspects with the defendant." (P.C.H.A. Tr. at 79).

Counsel's asserted justification does not provide a reasonable basis for his failure to investigate the possibility of an insanity defense for several reasons. First, under Rule 1101,

6. Because we decide on this ground, we need not reach Appellant's other assignments of error, which are:
   Whether Appellant's guilty plea was knowing and voluntary;
   Whether Appellant was competent to enter a plea;
   Whether counsel was ineffective for failing to withdraw the guilty plea at Appellant's request.

Pa.R.Crim.P., Appellant could have waived a jury trial if it had been determined that a jury would not have been sympathetic to his cause. Second, Pennsylvania law provides a procedure [7] whereby a court may hear evidence on whether a defendant was criminally responsible for the commission of the crime charged. If the defendant is found to have lacked criminal responsibility, an acquittal shall be entered. An alternative procedure for severance of the issue of criminal responsibility from the other issues in the case, and submission thereof to separate juries, is provided in section 404(c).[8] Although plea and sentence counsel could have requested that such procedures be followed in the instant case, he failed to do so.

■ Counsel's conduct must also be evaluated in the context of the duty owed to his client. In *U. S. v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), the United States Supreme Court defined a defendant's right to the assistance of counsel as "the right of the accused to have counsel acting as his assistant." *Id.* at 312, 93 S.Ct. at 2575. The Court went on to say that it "envisioned the lawyer as advising the accused on available defenses in order to allow him to plead intelligently." *Id.* (citing *Hamilton v. Alabama*, 368 U.S. 52, 55, 82 S.Ct. 157, 159, 7 L.Ed.2d 114 (1961)). Canon 7 of the Code of Professional Responsibility [9] sets out even more clearly, counsel's obligation to discuss with a client the available options. Specifically, EC 7–7 and EC 7–8 provide as follows:

EC 7–7. In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to made decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and, if

7. This procedure is set out in sections 403 and 404(a) of the Mental Health Procedures Act, Pa.Stat.Ann. tit. 50, §§ 7403 & 7404(a) (Purdon Supp. 1981–82).

8. Pa.Stat.Ann. tit. 50, § 7404(c) (Purdon Supp. 1981–82).

9. The Code of Professional Responsibility was adopted by the Supreme Court of Pennsylvania on February 27, 1974.

made within the framework of the law, such decisions are binding on his lawyer. . . . A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable and as to the prospects of success on appeal, but it is for the client to decide what plea should be entered and whether an appeal should be taken.

EC 7–8. A lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of relevant considerations. . . . A lawyer should advise his client of the possible effect of each legal alternative. . . . In the final analysis, however, the lawyer should always remember that the decision whether to forego legally available objectives or methods because of non-legal factors is ultimately for the client and not for himself. . . .

The American Bar Association has also formulated explicit guidelines with respect to the duties owed by defense counsel to the client. Specifically, the A.B.A. Standards Relating to the Defense Function, § 4.1 provides:

It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore *all* avenues leading to guilt and degree of guilt or penalty. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. *The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty.*

(Emphasis added).

█ In the instant case, the Commonwealth contends that counsel was not ineffective because a finding of insanity at the time of the offense was negated by the evidence and because the jury would have been hostile. This contention is not relevant because the dereliction asserted here is the decision not to explore the possibility of an insanity defense, not the decision to refrain from asserting it. It is possible that, after adequate investigation, counsel could properly

have recommended to Appellant that the best strategy to pursue was to enter a guilty plea in the hope of obtaining a lenient sentence.

The mere possibility that an insanity defense could not have been successfully asserted does not excuse counsel's failure to explore the merits of such a defense. Nor is it a justification for counsel making decisions without discussing them with Appellant. The record in the instant case unequivocally demonstrates that the information available to counsel imposed upon him a clear duty to investigate and to advise Appellant fully of the merits of an insanity defense. There is no reasonable basis for counsel's disregard of this duty.

A review of relevant cases indicates that Pennsylvania law is substantially in accord with the A.B.A. standard set out above. In *Commonwealth v. Bailey*, 480 Pa. 329, 390 A.2d 166 (1978), for example, defense counsel was deemed ineffective for failing to pursue an intoxication defense. The supreme court concluded that the fact that the defendant, ordinarily a teetotaler, had been drinking for a period of time should have prompted counsel to conduct an independent investigation of the circumstances of the case, despite the defendant's denial that he was drunk. *Id.*, 480 Pa. at 337, 390 A.2d at 170. Similarly, in *Commonwealth v. Mabie*, 467 Pa. 464, 359 A.2d 369 (1976), the supreme court found trial counsel ineffective because he dismissed the defense of self-defense without making a satisfactory investigation of certain facts of the case and because he decided not to interview eyewitnesses after concluding that the witnesses seemed to be hostile. In granting the defendant a new trial the court concluded that "counsel's investigation in this case was not sufficient to apprise him of the essential facts necessary to effectively advise Mabie." *Id.*, 467 Pa. at 474, 359 A.2d at 374. Regarding counsel's failure to interview witnesses, the court further stated:

However hostile these witnesses may have appeared to be, there is no basis for the decision neither to interview them nor to attempt to do so. While hostile witnesses at trial

may have presented added difficulties to Appellant's case, the question here is the decision not to interview them not the decision to refrain from calling them at trial. . . . (T)he value of the interview is to inform counsel of the facts of the case so that he may formulate strategy. *Id.* Counsel's neglect in the instant case was more egregious than that of counsel in *Mabie.*

■ As the United States Court of Appeals for the Third Circuit has stated, "defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner." *United States v. Williams,* 615 F.2d 585, 594 (3d Cir. 1980), (quoting *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir. 1974)). Counsel's failure to do so in the instant case denied Appellant effective assistance of counsel.

Accordingly, the order of the lower court is reversed and the case is remanded for a new trial.

WIEAND, J., dissents.