468 A.2d 472

**COMMONWEALTH of Pennsylvania**

v.

**Jack D. McCASKILL, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 23, 1983.

Filed Oct. 21, 1983.

Reargument Denied Dec. 29, 1983.

Richard S. Levine, Assistant Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, BROSKY and MONTEMURO, JJ.

SPAETH, Judge:

This appeal is from an order denying a petition filed under the Post-Conviction Hearing Act, 42 Pa.C.S.A. §§ 9541–9551. Appellant argues that his trial counsel was ineffective in failing to call three alibi witnesses, and that he should therefore be granted a new trial. We have concluded: that counsel reasonably believed that one of the witnesses was dead; that the record is unclear whether the testimony of another of the witnesses would have helped appellant; but that appellant did show that the testimony of the remaining witness would have helped him. Since we can find no reasonable basis for counsel's failure to call that remaining witness, we reverse and remand for a new trial.

On March 8, 1974, a jury found appellant guilty of possession of and dealing in narcotic drugs. On July 25, 1974, he was sentenced to three to six years in prison. We affirmed the judgment of sentence on April 10, 1975, 232 Pa.Super. 747, 337 A.2d 872 (1975), and the Supreme Court denied allocatur on November 13, 1975, No. 529 Allocatur Docket 1975.

On January 16, 1980, appellant filed his petition for relief under the Post-Conviction Hearing Act.[1] After a hearing, the lower court denied the petition, and this appeal followed.

Appellant was originally convicted on the strength of the testimony of Detectives James R. Ramsey and Bernard Ciganek of the Pittsburgh Police Department. Detective Ramsey testified that he purchased two half-spoons of heroin from appellant and Robert Baltimore on the evening of July 22, 1971. Ramsey said that at about 6:45 p.m. that evening he picked up appellant and Baltimore in the 900 block of Roselle Court in Pittsburgh, drove to the Hill District, where appellant and Baltimore left the car for a short time to get the heroin, and then returned, with appellant and Baltimore still along, to the 900 block of Roselle Court. It was there, he said, that he purchased the heroin from appellant and Baltimore. Ramsey estimated that he left appellant and Baltimore at the site of the sale at about 7:15 p.m. N.T. 47–50.[2] Detective Ciganek testified that he was assigned to cover Ramsey, and had followed Ramsey's car from Roselle Court to the Hill District and back. His testimony of what he observed corroborated Ramsey's testimony. N.T. 99–104.

One of appellant's arguments is that his trial counsel was ineffective in failing to look for Robert Baltimore, appellant's alleged co-conspirator, so that he could be called to testify as an alibi witness. It will be convenient to consider this argument first, before we discuss the bulk of the testimony at the PCHA hearing.

██ Baltimore testified at the PCHA hearing that he had pleaded nolo contendere to the charges on which he and

1. It might seem that appellant would have served his sentence. However, he was returned to prison after violating the conditions of his parole. N.T. PCHA 5/27/80, 15–16.

2. On direct examination Ramsey testified that he had been with appellant "about an hour. Perhaps an hour and fifteen minutes." N.T. 47. At one point during cross-examination, he testified that he met appellant at 6:45 p.m., N.T. 73, which, he agreed, would mean that he had left appellant at 7:45, instead of 7:15, N.T. 77.

appellant had been arrested, and that if he had been called at appellant's trial, he would have testified that appellant was not with him at the time the offense was committed. N.T. PCHA 9/17/80, 29, 32. From this it appears that Baltimore's testimony would have been helpful to appellant. However, trial counsel testified at the PCHA hearing that the assistant district attorney told him, before appellant's trial, that Baltimore had died. N.T. PCHA, 5/27/80 at 19. Appellant testified at trial, N.T. 156, and at the PCHA hearing, N.T. PCHA 5/27/80, 10, that at the time of trial he too thought that Baltimore had died. In these circumstances counsel could reasonably believe that Baltimore had in fact died. He was therefore not ineffective in failing to look for Baltimore as an alibi witness.

Appellant's remaining arguments concern trial counsel's failure to call Bernice Giles and Paulette King as alibi witnesses.

At his trial appellant testified that during 1971 he was living at 928 Roselle Court with his mother but that from July 19 to July 25 or 26 he was staying at the home of Paulette King, in the Homewood section of Pittsburgh, so that he could be with Bernice Giles, a former girlfriend who was visiting from Detroit and was also staying with King. According to appellant, on the evening of July 22—when the detective said the sale of heroin occurred—he and Giles were babysitting for King's children. N.T. 152–55. Appellant said that he had last been in touch with Giles at Christmas of 1971, and that he was not sure whether the address he used then was her address as of the time of trial, in March 1974. He said that he had tried to get in touch with her, to ask her to testify, but had been unsuccessful. N.T. 155. He also said that he did not know where King was living, and that he had not been in touch with her since the spring of 1972. N.T. 157.

At the hearing on his PCHA petition, appellant testified that he had told trial counsel about Giles and King, but "they didn't come in [to testify at trial]. I don't know the reason why they didn't come in." N.T. 5/17/80, 14.

Trial counsel also testified at the PCHA hearing, he said that he remembered little of his representation of appellant, N.T. 5/17/80, 17, and that he had been unable to consult his records on the case because he had given the file either to appellant or to the Public Defender. *Id.* Although he remembered that appellant had asked him to produce Giles and King as alibi witnesses, he did not remember having filed a notice of alibi defense until the district attorney, on the morning of the PCHA hearing, showed him the notice. *Id.* at 18. He did not remember talking to the alibi witnesses, trying to find them, or asking for a continuance so that he could try to find them. *Id.* at 18–20. He explained that he had expected to prevail on a speedy trial issue:

[T]he transaction occurred and he wasn't arrested until fourteen months later and ... he didn't go to trial for another year, so that was like 27 months delay and that's the issue I thought we were going [to] win on and unfortunately I was mistaken.

*Id.* at 22.

After trial counsel testified, the hearing judge asked appellant whether counsel had given him the file on the case, and appellant responded that counsel had only given him a copy of the transcript, and not counsel's file. *Id.* at 23. The judge then asked trial counsel to check with the Public Defender "to see whether you can find your records and if you find them, ... if that does refresh your recollection." *Id.* at 23–24. The record does not indicate whether counsel made such a check and if he did what the results were.

The hearing was then continued. At the continued hearing, Robert Baltimore and Paulette King testified, but Bernice Giles did not. We have already discussed the issue presented by Baltimore's testimony. Before discussing that presented by King's, we shall consider whether, given Giles's failure to testify, appellant has met his burden of proving that if trial counsel had looked for Giles, and had found her and called her to testify as an alibi witness, her testimony would have helped him. Or to state the issue

differently: since Giles did not testify at the PCHA hearing, the only evidence of what she would have said, had she been called to testify at trial, is appellant's own testimony, as he gave it at trial and later at the PCHA hearing. Was this sufficient to meet appellant's burden?

■ We are not able to resolve this issue satisfactorily. If the lower court had found that appellant's testimony was incredible, we should defer to that finding. *Commonwealth v. Unger*, 494 Pa. 592, 432 A.2d 146 (1980); *Commonwealth v. Hosack*, 459 Pa. 27, 326 A.2d 352 (1974); *Commonwealth v. Thigpen*, 259 Pa.Super. 59, 393 A.2d 715 (1978). The conclusion would then follow that appellant had not met his burden. But the court made no such finding. Indeed, in its opinion the court nowhere refers to Giles, or to appellant's argument regarding trial counsel's failure to call her as an alibi witness. In these circumstances we might remand for a finding on credibility. We have concluded, however, that that is unnecessary, for our decision turns, not upon whether trial counsel was ineffective in failing to call Giles, but upon whether he was ineffective in failing to call King.

■ At the PCHA hearing Paulette King corroborated the testimony appellant gave at trial, to the effect that he had stayed at King's house during Giles's one-week visit at the end of July 1971. King said that during July 1971 she was attending an evening class at Allegheny County Community College three nights a week—Monday, Wednesday, and Friday. Class was at 6 p.m., and on her class nights she left home about 5 p.m. Class lasted until close to 7 p.m. N.T. 9/27/80, 22. "Most of the time" her boyfriend brought her home; "[u]sually" she went "straight home" after class. *Id.* at 22–24. Although she did not recall what day of the week July 22 was,[3] she testified as follows:

3. It was a Thursday. While this fact is not mentioned in the transcript, we may take judicial notice of it. *Wilson v. Van Leer*, 127 Pa. 371, 17 A. 1097 (1899); *Mentz v. Unemployment Compensation Review Board*, 29 Pa.Commw. 287, 370 A.2d 1232 (1977).

Q. While Bernice [Giles] was babysitting for you, were you home when you weren't in class?

A. Constantly, right, because she came all the way from Detroit to see me, you know, yes.

Q. Did Mr. McCaskill ever leave the house while you were at home?

A. No. To tell you the truth, we cooked together, we cleaned together and we drank together.

Q. And he never left the house?

A. No, he was too much in love with her.

N.T. 9/27/80, 18–19.

In response to a question by the court King said that it was about an hour and half's drive from her home to the 900 block of Roselle Court—the site of the sale of narcotics for which appellant was convicted. N.T. 9/27/80, 23.

■■■■ The standard by which we gauge counsel's effectiveness is whether

the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

*Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604–05, 235 A.2d 349, 352–53 (1967) (emphasis in original).

*See also Commonwealth v. Bronson,* 457 Pa. 66, 321 A.2d 645 (1974); *Commonwealth v. Manning,* 263 Pa.Super. 430, 398 A.2d 212 (1979); *Commonwealth v. Lopez,* 262 Pa.Super. 1, 396 A.2d 454. In proceedings under the Post-Conviction Hearing Act, the petitioner has the burden of proving ineffective assistance of counsel. *Commonwealth v. LaSane,* 479 Pa. 629, 389 A.2d 48 (1978); *Commonwealth v. Klaric,* 263 Pa.Super. 286, 397 A.2d 1212 (1979); *Commonwealth v. Sweitzer,* 261 Pa.Super. 183, 395 A.2d 1376 (1978).

Counsel will not be deemed ineffective for having failed to call a witness unless the appellant is able to demonstrate that the witness's testimony would have been helpful to the defense. *See, e.g., Commonwealth ex rel. Washington v. Maroney, supra* (*citing Commonwealth ex rel. Sprangle v. Maroney,* 423 Pa. 589, 225 A.2d 236 (1967)). *See also Commonwealth v. Hagood,* 491 Pa. 181, 420 A.2d 401 (1980); *Commonwealth v. Helvy,* 478 Pa.Super. 458, 420 A.2d 631 (1980) (*per curiam* ).

In its opinion the lower court states that "it cannot be said that [Paulette King's] testimony would have been helpful to [appellant]" because "she was unable to state whether or not [appellant] had, in fact, been there the night in question ( [N.]T. at 24)." Slip op. at 2. This statement reflects a misunderstanding of King's testimony.

At page 24 of the transcript, cited by the lower court, King, in response to questions by the court, testified as follows:

Q. When you got home [was appellant there]?

A. Yes.

Q. You don't have any memory at all about what time he got home, he and Mr. Baltimore were supposed to be together when they made this sale to Detective Ramsey, right? You don't have any idea whether he left home that night or not, do you?

A. I didn't think he did, really.

Q. You don't know because you weren't there, right, you weren't there, right, so you don't know.

A. (No response.)

We find it difficult to read this testimony as the lower court summarized it—as manifesting "[an inability] to state whether or not [appellant] had, in fact, been there the night in question." Although the court by its question to King *asserted* her inability to say whether appellant had been at her home at the time he was charged with selling narcotics, she repudiated the assertion ("I don't think he did [leave home that night], really").

This repudiation, moreover, was consistent with King's other testimony. As we have mentioned,[4] July 22, 1971, the day of the sale, was a Thursday. According to King's testimony, she was home that night, for her classes were Monday, Wednesday, and Friday, and Giles and appellant were with her. Also according to King's testimony, it would have taken appellant an hour and a half to drive from her home to the site of the sale. Thus, even if King did not get home until 8 p.m.—as she did on class nights—appellant could not have been there with Giles and also have been at the site of the sale at 7:15 p.m., as Detective Ramsey had testified at trial. It is therefore plain that as petitioner, appellant met his burden of demonstrating that King's testimony would have been helpful to his defense.

██ Of course, the jury might not have believed King's testimony; it might have believed the detective's instead. But when the Commonwealth's case is thus dependent upon the credibility of its witnesses, trial counsel must explore the testimony of any witness, such as King, whose testimony might cast doubt on the testimony of the Commonwealth's witnesses. As the Supreme Court has stated in *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975):

If counsel's decision not to secure Gilmore's appearance or to have the notes of Gilmore's previous testimony read to the jury was based on a reassessment of its worth and a conclusion that it was of little or no value in the posture of this case, then that decision clearly had some reasonable basis designed to effectuate Twiggs's interests. In such circumstances, counsel's conduct would not constitute ineffectiveness. See *Commonwealth ex rel. Washington v. Maroney*, supra. Had counsel reached this decision on a basis designed to advance his client's interest, this case would be analogous to those situations in which, as a matter of trial strategy, counsel decides not to call a witness at all. See *Commonwealth v. Dancer*, [460] Pa. [95], 331 A.2d 435 (1975); *Commonwealth v. Owens*, 454 Pa. 268, 275, 312 A.2d 378, 382 (1973); *Com-*

---

**4.** Footnote 3, *supra.*

*monwealth v. Karchella,* 449 Pa. 270, 296 A.2d 732 (1972); *Commonwealth v. Ellis,* 445 Pa. 307, 284 A.2d 735 (1971); *Commonwealth v. Hawkins,* 445 Pa. 279, 282, 284 A.2d 730 (1971).

If, however, counsel's failure to seek compulsory process to obtain Gilmore's testimony or to have his prior testimony read to the jury was the result of sloth or lack of awareness of the available alternatives, then his assistance was ineffective. In a case where virtually the only issue is the credibility of the Commonwealth's witness versus that of the defendant, failure to explore all alternatives available to assure that the jury heard the testimony of a known witness who might be capable of casting a shadow upon the Commonwealth's witness's truthfulness is ineffective assistance of counsel.

*Id.,* 460 Pa. at 110–11, 331 A.2d at 443.

*See also, Commonwealth v. Abney,* 465 Pa. 304, 350 A.2d 407 (1976); *Commonwealth v. Charleston,* 251 Pa.Super. 311, 380 A.2d 795 (1977).

This case is not one in which counsel decided, after investigation, not to call an alibi witness for some tactical reason, for example because in counsel's view the witness's testimony would be more harmful than helpful to the client. *Commonwealth v. Karchella,* 449 Pa. 270, 296 A.2d 732 (1972); *Commonwealth v. Edwards,* 273 Pa.Super. 351, 417 A.2d 685 (1979). Nor is it a case in which the record fails to establish that the defendant told counsel of the existence of the alibi witness. *See Commonwealth v. Hagood, supra;*[5] *Commonwealth v. Owens,* 454 Pa. 268, 312 A.2d 378 (1973). Nor is it a case in which counsel tried but was unable to

---

**5.** In his dissent, Judge BROSKY concludes that *Commonwealth v. Hagood* controls this case. We are unable to agree. In *Hagood* no hearing under the Post Conviction Hearing Act had been held to determine how the alibi witness might have testified had he been called to testify at trial. The Supreme Court held that such a hearing was unnecessary, however, since Hagood, the appellant, could not recall whether he had been with the alibi witness on the date of the crime. Here, in contrast, appellant was sure that he had been at the alibi witness's home when the crime was committed. It was the alibi witness whose memory was not entirely clear as to whether she had had class that night. But see notes 3 and 4, *supra.*

locate the witness. To the contrary: trial counsel recalled appellant's having told him that Bernice Giles and Paulette King were alibi witnesses, but he did not recall, and the record does not disclose, that he made any attempt to explore their testimony and to call them as witnesses. King, moreover, testified that so far as she was concerned, at least, there had been no such attempt. N.T. 9/17/80, 12.

The only explanation counsel offered for this failure was his decision that it would be unnecessary to call any alibi witnesses because he expected the indictment to be quashed on the ground that appellant's right to a speedy trial had been violated. But this explanation is quite unacceptable.

Section 4-4.1 of the American Bar Association's Standards for the Defense Function, which has been adopted in Pennsylvania, provides: "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and *explore all avenues leading to facts relevant to guilt.*" American Bar Association, Standards for the Defense Function § 4-4.1 (approved 1979) (emphasis added). *See Commonwealth v. Yocham,* 483 Pa. 478, 397 A.2d 766 (1979); *Commonwealth v. Gainor,* 289 Pa.Super. 190, 432 A.2d 1116 (1981); *Commonwealth v. Borelli,* 288 Pa.Super. 319, 431 A.2d 1067 (1981). This duty to investigate exists even if counsel thinks that the particular avenue in question offers little chance of leading to a successful defense. *See Commonwealth v. Bailey,* 480 Pa. 329, 390 A.2d 166 (1978) (duty to investigate possible intoxication defense); *Commonwealth v. Gainor, supra* (duty to investigate possible insanity defense). Counsel may not decide not to investigate a possible defense, in the expectation that the case will not go to trial because a favorable ruling will be made on a pre-trial motion, unless that decision has *"some reasonable basis," Commonwealth ex rel. Washington v. Maroney, supra,* of serving his client's interests. Here we can find no such basis—nor did counsel suggest any. We don't doubt counsel's belief that the motion to quash was meritorious. But the most experienced counsel have been caught

by surprise when an argument believed to be meritorious is rejected. Since uncertainty pervades the adversary process, effective counsel will never forgo investigation of all possible defenses simply because he thinks he has made a winning pre-trial motion.

Furthermore, and finally, appellant's counsel knew the day before the trial that his pre-trial motion was not a winning motion. Even if we were to assume for the sake of argument that *up to that time* his failure to explore appellant's statement that he had two alibi witnesses was excusable, it became inexcusable when the motion to quash was denied. Then at least counsel should have tried to bring in the alibi witnesses (he had filed a notice of alibi defense), and if he could not, should have tried to make up for his negligence by requesting a continuance to enable him to bring them in.

The order of the lower court is reversed and a new trial is ordered.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting:

I dissent. The testimony which would have been given by the witness was too indefinite to have been sufficiently helpful to the defense. As such, its absence cannot form the basis for a finding of ineffective assistance of counsel.

The issue before us has been the subject of a number of appellate court opinions in this Commonwealth. First, "It is clear that trial counsel's failure to present a possible witness is not per se ineffective assistance of counsel. Counsel need not call every person mentioned by a defendant." *Commonwealth v. Charleston*, 251 Pa.Super. 311 at 316, 380 A.2d 795 at 797 (1977).

The generally stated standard to be applied is given in another case of this court. "Without some *positive* indica-

tion or demonstration that their testimony would be helpful to the defense, we cannot equate the failure to call the other occupants as witnesses with a conclusion of ineffective assistance of counsel." *Commonwealth v. Harper*, 233 Pa.Super. 294 at 300, 334 A.2d 761 at 763 (1975) (emphasis supplied).

This was interpreted in one opinion as requiring "that appellant ... demonstrate the necessity of the ... testimony ..." *Commonwealth v. Helvy*, 278 Pa.Super. 458 at 462, 420 A.2d 631 at 633 (1980).

The Supreme Court of this Commonwealth has decided a case remarkably similar to the one *sub judice*. *Commonwealth v. Hagood*, 491 Pa. 181, 420 A.2d 401 (1980). In *Hagood* there was also an allegation of ineffective assistance of counsel due to a failure to call a potential witness. However, that witness was not definite in his recollection as to the exact date in question. "Such uncertainty on the crucial facts necessary to establish the claim of ineffectiveness precludes favorable consideration ... Certainly there is no basis for the grant of a new trial." *Commonwealth v. Hagood*, supra, 491 Pa. at 186, 420 A.2d at 404.

This is, I believe, exactly the situation before us. The proposed witness did not remember whether the day in question was one on which she had classes.[1] Nor was she able to give any specific testimony about the relevant date. All she could contribute was very general statements about appellant's presence over the period of a whole week. This thin tissue cannot support a finding of ineffective assistance of counsel mandating a new trial. It does not give "a *positive* indication ... that (the) testimony would be helpful." Nor does it "demonstrate the necessity of the ... testimony."

I would affirm judgment of sentence.

---

1. It was not, as the majority opinion points out, a day on which she had classes.