J-S64018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: M.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.H. | No. 342 MDA 2017 |

Appeal from the Order Entered January 4, 2017
In the Court of Common Pleas of Dauphin County
Juvenile Division at No(s): CP-22-JV-0000267-2016

BEFORE:  PANELLA, SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED NOVEMBER 20, 2017**

Appellant, M.H., a minor, appeals from the dispositional order[1] entered on January 4, 2017, after he was adjudicated delinquent on October 25, 2016, for the crimes of riot, simple assault, and disorderly conduct.[2]  After careful review, we affirm.

The juvenile court set forth the relevant factual background in this matter as follows:

_____

[*]  Former Justice specially assigned to the Superior Court.

[1]  Although Appellant styles his appeal as being from the February 1, 2017 order denying his post-disposition motion, the appealable order is the January 4, 2017 dispositional order, which is the equivalent of the judgment of sentence in a criminal matter.  ***In re J.D.***, 798 A.2d 210, 211 n.1 (Pa. Super. 2002). We have corrected the caption accordingly.

[2]  18 Pa.C.S. §§ 5501(1), 2701(a)(1), and 5503(a)(1), respectively.

The instant case involves two (2) separate fights that occurred after school on March 10, 2016. Portions of both fights were recorded on bystanders' cell phone[s] and were admitted at trial as Commonwealth's Exhibits 2 (first fight) and 7 (second fight). The first fight occurred on Orchard Drive approximately half-way between North Harrisburg and Sixth Streets. The second fight occurred on Lincoln Street near Daron Alley.

The Commonwealth presented testimony from ["T.M.," a juvenile], who sustained head injuries as a result of the fights. T.M. testified that he was walking home from school on March 10, 2016 when he came across other juveniles fighting and tried to break it up when someone swung at him. (Notes of Testimony, Adjudication Hearing 10/25/16 ("N.T.") at 12.) After becoming involved in the fight, T.M. testified that he was holding Appellant, who was on top of him, and trying to stand up, but other people were fighting around him. (N.T. at 16). T.M. was trying to protect himself when he was picked up and fell down again. (Id.) According to T.M., approximately forty (40) people were in the general vicinity of the first fight. (N.T. at 18). The fight was eventually broken up by some of the by-standers, and no one was injured. (Id.)

As for the second fight, T.M. testified that he continued to walk home when he was approached by Appellant and his two brothers. (N.T. at 19). T.M. testified that he and Appellant were fighting one-on-one in the beginning, and then when T.M. got on top of Appellant, he was "swooped" by Appellant's brothers. (N.T. at 23). Thereafter, T.M. blacked out and he "came to" on the floor in his friend's home. (N.T. at 24). As a result of the fight, T.M. sustained a wound to his head as depicted in Commonwealth's Exhibit 4.

Appellant also testified during the adjudication hearing. He stated that he was walking home from school with a group of people when all of a sudden someone next to him threw a punch at him. (N.T. at 61). It was a closed fist punch to the left cheek. (Id.) Appellant backed up and saw T.M. throwing his hands up, and then T.M. grabbed him. (N.T. at 62). Appellant testified that he felt that he was "swooped" by T.M. and was not trying to fight him at that time. (N.T. at 63). According to Appellant, the first fight was broken up by Appellant's friend [R]. (Id.).

After the first fight was broken up, Appellant testified that T.M. continued to walk behind him cracking jokes and saying things to him. (N.T. at 64-65). Appellant then saw his brothers walking towards him, and he and T.M. began to fight one-on-one. (N.T. at 64-65). Appellant did not call them or send for them, however, he testified that he heard someone went to get them. (Id.) Appellant stated that he "grabbed T.M.'s head and he fell on his head and I just held on there" which caused T.M.'s head injury. (Id.) Thereafter, Appellant stood up and saw that there were other people fighting around him. (N.T. at 66).

The Commonwealth also presented testimony from Officer Dory Thompson (hereinafter "Officer Thompson") of the Steelton Borough Police Department. Officer Thompson testified that the police department received several calls of fights breaking out after school let out throughout the Borough on March 10, 2016. (N.T. at 33). The first 911 call came in at approximately 3:00 P.M. wherein the caller advised that there was a fight occurring at the intersection of Lincoln and Bailey Streets. (N.T. at 34-35). The fight had already disbursed when she arrived, but she made contact with the caller who advised that one of the juveniles involved in the fight left with a head injury. (N.T. at 35).

At approximately 3:30 P.M., Officer Thompson was dispatched for another call for a fight at the intersection of North Second and Pine Streets. (N.T. at 35-36). Upon her arrival, she observed a group of juvenile males on the porch of 109 Second Street, and a gold vehicle parked across the street with T.M. in the passenger seat. (N.T. at 37). The males were later identified as Appellant and his brothers, [J.Z.H. and W.H.] (N.T. at 39). Officer Thompson then made contact with T.M. and called for an ambulance to attend to his head injury. (Id.) When questioned about his injury, T.M. "pointed to the group of males that - juvenile males that were standing on the porch across the street and he said that they had jumped him on Lincoln." (N.T. at 37).

Due to concerns for her safety, as well as the safety of the public, Officer Thompson requested back-up assistance as there were four (4) other groups of five (5) to six (6) individuals congregating in the area. (N.T. at 38). Approximately four (4) other townships responded to the call - Lower Swatara, Swatara, Highspire, and Royalton. (Id.)

- 3 -

Thereafter, Officer Thompson made contact with … T.M.'s mother, who became agitated and started to walk towards the juvenile males on the porch. (N.T. at 39). Officer Thompson stopped her and advised her not to make contact. (Id.) Next, Officer Thompson made contact with … Appellant's mother, who advised her that Appellant was jumped first by T.M. (N.T. at 41). However, [Appellant's Mother] was not present during the fight, and the only information she had was provided to her by Appellant. (Id.) [Appellant's Mother] provided Officer Thompson with a video of the first fight that was entered into evidence as Commonwealth's Exhibit 2. (N.T. at 42).

[Appellant's Mother] testified on behalf of Appellant, her son. She testified that she had received some telephone calls at work telling her about the fights. (N.T. at 54). Based on information that she received, [Appellant's Mother] placed a 911 call on her way home from work that someone was attempting to kick in her door with a gun. (N.T. at 54-55). When she arrived home, [Appellant's Mother] ran straight to the front door [which] looked as though it had been kicked out and would not close. (N.T. at 56). Thereafter, [Appellant's Mother] had a conversation with Officer Thompson based on the information she received through telephone calls earlier, and had not yet had a chance to speak with Appellant. (N.T. at 57). As previously stated, [Appellant's Mother] did not personally witness any of the events that occurred on March 10, 2016. (N.T. at 58).

Appellant resides near the intersection of Pine and North Second Streets. On cross-examination, he testified that to get home from school he typically walks west on Orchard Drive, turns right travelling north on North Harrisburg Street, and then left on to Pine Street until he reaches his home. (N.T. at 69-70). Appellant testified that he was travelling that route on March 10, 2016 when T.M. was following him. (N.T. at 70). On rebuttal, Officer Thompson testified that he would have had to travel a different route in order to be present at the second fight. (N.T. at 73). The second fight occurred near the intersection of Lincoln and Daron Alley, which is approximately two (2) to three (3) blocks north of where Appellant resides. Therefore, Appellant would have had to travel approximately three (3) blocks past the direction of his home, and another block down, in order to be present for the second fight. (N.T. at 74).

Juvenile Court Opinion, 4/7/17, at 3-7.

As noted above, Appellant was adjudicated delinquent on October 25, 2016, for the crimes of riot, simple assault, and disorderly conduct. A dispositional order was entered on January 4, 2017, and Appellant was placed on formal probation with school-based supervision, ordered to complete twenty-five hours of community service, write an essay on conflict resolution, and attend and comply with cyber school regulations. N.T., Disposition, 1/4/17, at 5-6; Juvenile Court Opinion, 4/7/17, at 1-2.

Appellant filed a post-dispositional motion on January 17, 2017. The juvenile court denied Appellant's motion on February 1, 2017, and Appellant filed his notice of appeal on February 16, 2017. Both Appellant and the juvenile court have complied with Pa.R.A.P. 1925.

Before we address the merits of Appellant's appeal, we must determine if this matter is properly before our Court. A notice of appeal must be filed within thirty days of the entry of the order being appealed. Pa.R.A.P. 903(a). Pursuant to the Pennsylvania Rules of Juvenile Court Procedure, a party may file a post-dispositional motion within ten days from the entry of the order. Pa.R.J.C.P. 620(A). If a timely post-dispositional motion is filed, the appeal period is tolled, and the party has thirty days from the entry of the order disposing of the post-dispositional motion in which to file a timely appeal. Pa.R.J.C.P. 620(B). Because Appellant's dispositional

order was entered on January 4, 2017, he had until January 17, 2017, in which to file a post-dispositional motion.[3]

When this matter was appealed to this Court, neither the juvenile court docket nor the certified record reflected the filing of a post-dispositional motion. Accordingly, Appellant's February 16, 2017 notice of appeal appeared untimely having been filed more than thirty days from the entry of the January 4, 2017 dispositional order. On March 28, 2017, this Court directed Appellant to show cause why this appeal should not be quashed as untimely, and on March 31, 2017, we directed the juvenile court to ensure the accuracy of the juvenile court docket. Appellant responded that he had filed a post-dispositional motion on January 17, 2017, and the juvenile court supported Appellant's assertion. The juvenile court responded that Appellant had filed a post-dispositional motion, but the motion had been filed at a docket number associated with a separate case involving Appellant. Juvenile Court Opinion, 4/7/17, at 2. The juvenile court explained:

> The Post-Dispositional Motion was filed to Docket Number 239-JV-2015 (which was one of [Appellant's] previous cases). However, because [the juvenile court] was served with a copy of the motion, the incorrect number was not recognized, and it was

---

[3] The tenth day after the entry of the dispositional order fell on Saturday, January 14, 2017; Monday, January 16, 2017, was Dr. Martin Luther King Jr. Day. Thus, Appellant had until Tuesday, January 17, 2017, to file a timely post-dispositional motion. *See* 1 Pa.C.S. § 1908 (stating that, for computations of time, whenever the last day of any such period shall fall on Saturday or Sunday, or a legal holiday, such day shall be omitted from the computation). Pa.R.A.P. 107; Pa.R.A.P. 903, note.

disposed of accordingly. On March 28, 2017, the Superior Court issued a rule upon Appellant to show cause why this appeal should not be quashed as untimely as the Post-Dispositional Motion was not docketed to Docket Number 267-JV-2016. Counsel for Appellant filed a response attaching a copy of the filed Post-Dispositional Motion (with the wrong docket number). Thereafter, the Superior Court directed this Court to docket the Post-Dispositional Motion within fourteen (14) days of the March 31, 2017 Order. It was at this time that this Court realized that the Post-Dispositional Motion was filed to the wrong docket, and notified counsel for Appellant to file a praecipe requesting the Post-Dispositional Motion to be docketed to the correct docket number.

Juvenile Court Opinion, 4/7/17, at 2, n.4. Although it appears that counsel has yet to *praecipe* to have the post-dispositional motion docketed at the correct docket number, we will consider as done that which should have been done. We decline to delay the disposition of this appeal and remand to allow Appellant to complete the ministerial task of filing the aforementioned *praecipe*. **Accord Commonwealth v. Allen**, 420 A.2d 653, 654 n.3 (Pa. Super. 1980) (deeming "done that which ought to have been done," and reaching the merits of an appeal where trial court's order had not been entered on the docket); **see also** Pa.R.A.P. 105(a) (permitting this court to disregard the strict requirements of the appellate rules in order to expedite a decision). We are, therefore, satisfied that the January 17, 2017 post-dispositional motion was timely, it tolled the appeal period, and as a result, Appellant's appeal was timely.

On appeal, Appellant raises the following issues for this Court's consideration:

1. Whether the evidence presented at trial was insufficient to sustain the ajudication [sic] of deliquency [sic] for riot and disorderly conduct?

2. Did the trial court erred [sic] when it denied [Appellant's] motion for a new ajudication [sic] hearing based on the ajudication [sic] of delinquency was [sic] against the weight of the evidence?

3. Did the trial court err when it overruled [Appellant's] objection to [the] Commonwealth's introduction of [Appellant's] pre-arrest silence?

Appellant's Brief at 8 (full capitalization and underscoring omitted).

In his first issue on appeal, Appellant challenges the sufficiency of the evidence underlying his adjudications. When examining a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, this Court employs a well-settled standard of review:

When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability

of fact can be drawn from the combined circumstances established by the Commonwealth.

***In Interest of J.G.***, 145 A.3d 1179, 1188 (Pa. Super. 2016) (citations omitted). The finder of fact is free to believe some, all, or none of the evidence presented. ***Id***.

Appellant avers that the Commonwealth failed to produce sufficient evidence to establish disorderly conduct. Disorderly conduct is defined as follows:

> **(a) Offense defined.--**A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
>> (1) engages in fighting or threatening, or in violent or tumultuous behavior[.]

18 Pa.C.S. § 5503(a)(1).

In the record certified to this Court on appeal, there are video recordings that reveal Appellant engaging in two fights with T.M. N.T., 10/25/16, at 13-14, 22-23. Additionally, Appellant admitted to participating in these fights. ***Id***. at 63, 65. Accordingly, there is sufficient evidence to establish the elements of disorderly conduct.

Appellant also argues that the evidence was insufficient to establish the crime of riot. Riot is defined as follows:

> A person is guilty of riot, a felony of the third degree, if he participates with two or more others in a course of disorderly conduct:
>
>> (1) with intent to commit or facilitate the commission of a felony or misdemeanor[.]

- 9 -

18 Pa.C.S. § 5501(1).

"The essential element of a riot is group action." *Commonwealth v. Crawford*, 483 A.2d 916, 918 (Pa. Super. 1984) (citing *Commonwealth v. McGavin*, 451 A.2d 773, 775 n.4 (Pa. Super. 1982)). As discussed above, Appellant engaged in fights with T.M., and this behavior constituted disorderly conduct. The record further reveals that in Appellant's second fight with T.M., Appellant's two brothers joined Appellant in the assault[4] on T.M. N.T., 10/25/16, at 13-27. Thus, Appellant and his brothers commenced in a "group action" with the intent to fight with and cause bodily injury to T.M., and this concerted assault and disorderly conduct resulted in injuries to T.M. We discern no error of law in the juvenile court's conclusion that the evidence was sufficient to satisfy the elements of riot.

In Appellant's second issue, he argues that the adjudication of delinquency was against the weight of the evidence. We begin our discussion of this issue with our well-settled standard of review:

> We may only reverse the juvenile court's adjudication of delinquency if it is so contrary to the evidence as to shock one's

---

[4] As discussed above, Appellant was also adjudicated delinquent of simple assault. "A person is guilty of assault if he … attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S. § 2701(a)(1). Simple assault committed during a fight or scuffle entered into by mutual consent, as is the case here, is graded as a misdemeanor of the third degree. 18 Pa.C.S. § 2701(b)(1). Appellant does not challenge the sufficiency of the evidence related to the adjudication for simple assault.

sense of justice. Moreover, where the court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the juvenile court palpably abused its discretion in ruling on the weight claim.

*In re J.M.*, 89 A.3d 688, 692 (Pa. Super. 2014) (citation omitted). "Hence, a juvenile court's denial of a weight claim is the least assailable of its rulings. Conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve." *Id.* (citation omitted).

After review, we conclude that there was no abuse of discretion in the juvenile court's conclusion. The record reveals that Appellant and T.M. engaged in two fights on March 10, 2016, and both instances were captured in video recordings. N.T., 10/25/16, at 13-14, 22-23. The video of the second fight reflects that while Appellant and T.M. were fighting, two additional people joined Appellant in assaulting T.M. *Id.* at 11, 22-23. These individuals were Appellant's brothers. *Id.* at 11. There is no dispute that Appellant was involved in the fight, that the fights occurred on a public street, that T.M. sustained bodily injury, or that Appellant was aided in his assault on T.M. by his two brothers. We conclude that the juvenile court did not abuse its discretion in denying Appellant's motion for a new hearing. Accordingly, Appellant is entitled to no relief.

In his final issue on appeal, Appellant argues that the juvenile court erred when it overruled Appellant's objection to the introduction of Appellant's pre-arrest silence. We disagree.

Appellant correctly points out that the Commonwealth cannot use a non-testifying defendant's pre-arrest silence to support its contention that the defendant is guilty because such use infringes on a defendant's right to be free from self-incrimination. Appellant's Brief at 20 (citing **Commonwealth v. Molina**, 33 A.3d 51, 62 (Pa. Super. 2011)). The testimony at issue occurred during the Commonwealth's questioning of Police Officer Dory Thompson. At the adjudication hearing, the following exchange took place on the record:

[Deputy District Attorney] Q: Were you able to identify who was across the street at that time?

[Police Officer Dory Thompson] A: I was, yes.

Q: And who was standing there?

A: [Appellant and his two brothers].

Q: Did you approach them regarding this case?

A: I did, yes. And also present with them was their mother ….

Q: What happened at that point?

A: The juvenile males, [Appellant and his brothers], were - -

[Counsel for Appellant]: Objection. Judge, this calls for whether or not he's going to make statements before the defense has an opportunity to present its case. So, you know, basically whether he remains silent or didn't or whatever his comments were I ask that they not get into that during the Commonwealth's case in chief.

THE COURT: This would be whose statements?

[Counsel for Appellant]: I think they're going to - - the officer is going to testify as to what [Appellant] might have said

- 12 -

or didn't say. And I would suggest that he has - - they can't introduce his right to remain silent even at the day of the incident.

THE COURT: **Well, except those are statements, adverse statements by your client. Whether they come in is something that - - he may decide whether he's going to testify or not but there's no basis to object to them coming in at this point - -**

[Counsel for Appellant]: All right.

THE COURT: -- I believe. So I'm going to overrule the objection.

[Counsel for Appellant]: Okay.

THE COURT: And you may proceed

[Deputy District Attorney]:

Q: What happens after you approach the juveniles on the porch? How does your investigation continue at this point?

A: I attempted to get their side of the story and ask, you know, why they were standing there, what happened, and not one of them would answer my questions.

N.T., 10/25/16, at 39-41 (emphasis added).

It appears that there was some confusion regarding what Appellant's counsel was objecting to and upon what objection the juvenile court was ruling. The juvenile court addressed this issue as follows:

During the adjudication hearing, the objection was not specific. It appears that Appellant's attorney was unsure whether Appellant made a statement or remained silent. This Court was made to believe that Appellant made statements adverse to his interest, which would be admissible as a hearsay exception to the Pennsylvania Rules of Evidence. However, when it became obvious that there was no statement made, that Appellant apparently did not say anything at all, counsel failed to renew

- 13 -

the objection. Therefore, this Court finds that the objection was defective, and failed to give notice to the Court as to a specific objection. Moreover, when it became obvious that no statements were made, counsel for Appellant failed to preserve the issue. Accordingly, the Court did not commit reversible error and the alleged pre-arrest silence did not play a role in the Court's decision.

Juvenile Court Opinion, 4/7/17, at 14. We agree with the juvenile court's assessment. "In order to preserve an issue for review, a party must make a timely and specific objection." **Commonwealth v. Duffy**, 832 A.2d 1132, 1136 (Pa. Super. 2003); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

The notes of testimony reveal that the juvenile court was under the impression that Officer Thompson was being asked about a statement Appellant had made, and Appellant's counsel's objection did not clarify the issue. Moreover, when Officer Thompson stated that Appellant gave no statement, and the grounds for an objection regarding pre-arrest silence manifested, Appellant's counsel failed to object on this proper basis. For these reasons, we agree with the juvenile court that Appellant failed to make a timely and specific objection, and therefore, this objection to the mention of pre-arrest silence was waived. **Duffy**, 832 A.2d at 1136.

Assuming *arguendo*, that Appellant's counsel had lodged a proper objection and that the juvenile court erred in ruling that Officer Thompson's testimony was admissible, any error was harmless. "Harmless error exists if ... the properly admitted and uncontradicted evidence of guilt was so

- 14 -

overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict." ***Commonwealth v. Mitchell***, 135 A.3d 1097, 1106 (Pa. Super. 2016). As set forth above, Appellant engaged in a fight with T.M. on a public street, caused bodily injury to T.M., and Appellant's brothers joined Appellant in his assault on T.M. Moreover, there was recorded video evidence of the assault on T.M. Thus, the properly admitted evidence was overwhelming. Therefore, even if Appellant had objected and preserved this issue regarding pre-arrest silence, we would conclude that any error was harmless.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm the January 4, 2017 dispositional order.

Order affirmed.

Judge Panella joins this Memorandum.

Justice Fitzgerald notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2017